STATE of Missouri, Plaintiff–
Respondent,

v.

Shelby Gene DEBLER, Defendant–
Appellant.

Shelby Gene DEBLER,
Movant–Appellant,

v.

STATE of Missouri, Defendant–
Respondent.

No. 70922.

Supreme Court of Missouri,
En Banc.

April 20, 1993.

As Modified on Denial of Rehearing
June 29, 1993.

Janet M. Thompson, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rudolph R. Rhodes IV, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

Convicted by a jury of murder in the first degree, Shelby Gene Debler was sentenced to death. His timely post-conviction motion under Rule 29.15 was overruled. On appeal, Debler raises 16 points of error. These errors deal with four separate stages: 1) jury selection; 2) guilt phase; 3) penalty phase; and 4) post-conviction motion. This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3. The conviction is affirmed; the sentence is reversed; the overruling of the Rule 29.15 motion is affirmed with respect to conviction and dismissed as moot with respect to sentence; the case is remanded for a new sentencing hearing.

## I.

Due to an unpaid debt, Debler had feuded with Danny Fisk since November 1986, with each harassing the other and his family. Both sides, apparently, filed complaints with local police departments, and various other law enforcement officials, with little or no response other than occasional questioning.

On July 25, 1987, shortly before 9 p.m., Debler was driving with his brother, Brent, and a friend when he was stopped by the police and taken into custody on one of those complaints. Some evidence suggests that Debler was drunk at that time. Be-

tween the time of the arrest and posting bond, Debler repeatedly cursed the police officers. Debler also made threats against the police officers and Fisk.

After his release, Debler went to the friend's house and apparently resumed drinking. There, Debler learned that some type of box had been left in his driveway, so he called the police several times. The last time Debler talked to the police was about 12:20 a.m.—while still at his friend's house.

Leaving there, he drove to his own home with his brother, Brent. Debler and Brent proceeded to rig a trap gun to the main door—with a string tied to the gun, run along the ceiling, and attached to the doorknob. After the gun was set, "dry fired," and loaded with one bullet, both Deblers left the house through a window. Debler went to a neighbor's house and called the sheriff's office—at about 2:40 a.m.—claiming that his house was being or had been burglarized and that an officer was needed.

In response, the dispatcher contacted Sheriff C.A. LaRew, who went to the Deblers'. At about 3:10 a.m., LaRew radioed that he was at the Deblers' and leaving the car. After LaRew looked around the outside, LaRew and Debler went to the main door while Brent got the house key out of the car. LaRew stood to the right of the door as he opened it.[1] The gun went off and the bullet hit LaRew in the head, shattering part of his skull, and scattering pieces of his brain.

Debler called for assistance on LaRew's radio, stating that LaRew had just been killed. Police officers from several jurisdictions responded. When the officers arrived at the house, the Deblers claimed that Fisk was responsible. The officers proceeded to search the house and discovered the trap gun. The next day, after talking to their mother, both Deblers separately confessed to setting up the gun together.

## II. Jury Selection

Debler raises two points concerning the trial court's ruling about questions by both sides during the death-qualification part of voir dire and the State's strike for cause of venireperson Barbara Ricketts. Debler also alleges the post-conviction court similarly erred.

The standard of review on these issues is "abuse of discretion" by the trial judge. *State v. McMillin*, 783 S.W.2d 82, 93–94 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). However, on these matters, that discretion is relatively narrow.

■ As a starting point, a challenge for cause requires the party seeking removal to state the specific reason why that venireperson is not qualified to serve and to convince the judge of the validity of that reason. *State v. Reed*, 137 Mo. 125, 38 S.W. 574, 575 (1897).

One basis for a challenge for cause is bias. One type of bias involves venirepersons who are witnesses, who have formed an opinion on the material facts of the case, or who are kin to the defendant, the victim or the prosecutor. *§ 494.470.1 RSMo Supp.1992*. This type of bias is not in issue.

■ The other type of bias focuses on opinions about "larger issues." To some extent, all members of the pool have this form of bias. To exclude venirepersons solely because of their views on such issues violates the fair cross-section requirement. *Cf. Witherspoon v. Illinois*, 391 U.S. 510, 518–23, 88 S.Ct. 1770, 1774–1777, 20 L.Ed.2d 776 (1968). Therefore, these individuals are excluded only if their views would preclude following the instructions given by the court. *§ 494.470.2 RSMo Supp.1992*. This test governs death-qualification. *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *see also Ross v. Oklahoma*, 487 U.S. 81, 83–85, 108 S.Ct. 2273, 2275–76, 101

1. The evidence at trial, and the theories of both sides, indicated that Debler said nothing as LaRew opened the door. At the 29.15 hearing, Debler introduced—as evidence of his mental state during custody and his inability to voluntarily waive his rights—a report made by an officer involved in booking Debler. According to this report, while Debler was being booked just before 5 a.m., he said, "C.A. was my friend, I told him not to open the door."

L.Ed.2d 80 (1988); *Gray v. Mississippi,* 481 U.S. 648, 658–59, 107 S.Ct. 2045, 2051–52, 95 L.Ed.2d 622 (1987); *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980); *State v. Grubbs,* 724 S.W.2d 494, 496–97 (Mo. banc), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987).

■ This test limits challenges for cause solely due to general feelings about the death penalty. To determine whether these feelings are sufficiently strong to preclude following the instructions, attorneys have "wide latitude" to allow "deep probing" with their questions. *McMillin,* 783 S.W.2d at 94; *cf. Morgan v. Illinois,* — U.S. —, —–—, 112 S.Ct. 2222, 2232–33, 119 L.Ed.2d 492 (1992). This wide latitude is not, however, complete and total freedom; the questions must still be relevant and proper. *Cf. McMillin,* 783 S.W.2d at 94.

■ Certain questions are normally permissible. Direct questions about the venireperson's feelings about the death penalty are normally proper. *McMillin,* 783 S.W.2d at 93. Likewise, general questions about following the instructions are normally allowed. *State v. Dixon,* 717 S.W.2d 847, 848 (Mo. banc 1986). Questions whether a venireperson will hold the State and the defendant to the requisite standard of proof are generally appropriate. *See State v. Foulk,* 725 S.W.2d 56, 71–72, 73–74 (Mo.App.1987); *cf. State v. Herndon,* 670 S.W.2d 32, 36–37 (Mo.App.1984) (allowing discussion of reasonable doubt standard as follow-up to question on ability to obey standard).

■ The difficult area—both with questions and with challenges for cause—involves the "weighing" instructions, requiring the jury to weigh the aggravating circumstances to see if they warrant death and to weigh aggravating circumstances against mitigating circumstances. *See* MAI–CR 3d 313.42; MAI–CR 3d 313.44; MAI–CR 3d 313.46. While it is generally inappropriate to seek commitments on the alleged facts of the case, the parties are entitled to a jury that will weigh these circumstances. *See State v. Norton,* 681 S.W.2d 497, 499 (Mo.App.1984). A juror who would consider one of the two penalties only under impossible circumstances is subject to disqualification. *Morgan,* — U.S. at —–—, 112 S.Ct. at 2234–35; *State v. Antwine,* 743 S.W.2d 51, 61 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). A juror who under some of the hypothetical facts of the case would vote one way or the other is not subject to disqualification for cause.

■ The actions of the prosecutor and the judge in this case reflect sensitivity for these concerns. Debler objects to two questions by the State, which were posed to multiple venirepersons. First, whether the venireperson could "in the proper case if you felt it was fair and just" vote for the death penalty? Despite Debler's specific allegation, this question is not an attempt to receive a "commitment" from these venirepersons. Second, whether the venirepersons felt the death penalty was a good and necessary law? Both questions legitimately attempt to determine the venirepersons' feelings toward the death penalty and the impact of those feelings on their ability to follow the instructions.

■ Debler also objects to two repeated comments by the prosecutor. First, the prosecutor occasionally referred to the penalty phase as a "short hearing"—usually in comparison to the guilt phase. In comparison to the guilt phase, the penalty phase is typically shorter. These comments were not an attempt to denigrate the seriousness of the penalty phase.

Second, the prosecutor stated that finding a statutory aggravating circumstance "justifies your consideration" of the death penalty. Despite Debler's contention, this accurately states the law. Once the jury finds one or more aggravating circumstance—including at least one statutory circumstance—it must consider whether these circumstances warrant the death penalty. *§ 565.030 RSMo 1986;* MAI–CR 3d 313.42.

Debler's last complaint about voir dire concerns the trial court's sustaining the State's objections to a series of defense

questions. First, whether the venireperson felt "that because of your belief that you should be denied your ability to do your duty as a citizen and sit on a jury in a case like this?" Second, "do your beliefs require you to remove yourself in deciding, as in a case like this, and participating and making a decision that can mean life or death?" Third, "do you understand that all the law requires is that you consider the imposition of the death penalty if you find guilt, it doesn't require you to vote for it, do you understand that?" Fourth, "do you understand that if you can't do that, and if you can't promise to consider imposing the death penalty, that you disqualify yourself as a juror?" Fifth, defense began to ask a question apparently attempting to highlight the effect of death qualification on the imposition of the death penalty.

 As the prosecutor noted, the essence of this series was not demonstrating whether the venireperson could follow the instructions, but rather suggesting how to circumvent death qualification. Among the series, the only question arguably proper was the third question, which sought to explain what the law requires, on the chance that the venireperson misunderstood the duty of a juror in the penalty phase. While a defendant (or the State) is entitled to redeem venirepersons by demonstrating their ability to follow the instructions, this series of questions went over the line. It was well within the trial court's discretion to limit this abuse of voir dire.

 Lastly, Debler objects to the disqualification of venireperson Ricketts because of her opposition to the death penalty. Ricketts was the only venireperson struck for this reason who was high enough on the jury list to serve. Debler claims that, because Ricketts's statements were limited to the *possibility* that her views impaired her ability to follow the instruction, she could not be struck for cause.

True, a venireperson's beliefs must impair that person's ability to follow the instructions in order to be struck for cause. This test, however, is not a series of "magic" words. Rather it is a decision of fact made by the trial judge based on observing the venireperson and her answers. Ricketts's responses raise a legitimate concern about her ability to follow the instructions. Given these responses, the State made a precise challenge for cause; and the trial court agreed. Disqualifying Ricketts was not an abuse of discretion.

Debler also raises this last claim in his post-conviction motion. Matters cognizable on direct appeal are not generally cognizable in proceedings under Rule 29.15—a motion encompassing claims of ineffective assistance of counsel. *Cf. Amrine v. State*, 785 S.W.2d 531, 536 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). An allegation of error in the strikes of venirepersons is not cognizable in a post-conviction motion.

Debler's claims of error during jury selection are denied.

### III. Guilt Phase
#### A. Evidence and Arguments

With respect to the evidence and arguments during the guilt phase, Debler objects to parts of the prosecutor's opening and closing arguments, the admission of Debler's confession and his brother Brent's statement, and the submissibility of the case to the jury.

#### 1. State's Opening Argument

Debler complains about four statements by the prosecutor in opening argument. As Debler did not preserve these claims, review is only for "plain error." *Rule 30.-20.*

First, the prosecutor stated that the Deblers had harassed Fisk. Debler complains that the State did not later introduce supporting evidence, though such evidence surfaced in defense cross-examination. "The mere neglect to set forth some fact mentioned in opening is not prejudicial unless the prosecutor never intended to present the evidence or actually knew he could not support the declaration of proof." *State v. Gilmore*, 681 S.W.2d 934, 944 (Mo. banc 1984). The prosecutor's statement here did not cause "manifest injustice."

Second, the prosecutor stated that one of the Deblers said: "We gotta have *the sheriff* out here right away." (emphasis added) Debler complains that this statement was inaccurate. The State notes that the prosecutor said this once, and then repeatedly made the accurate statement that the Deblers had requested "an officer." The statement that the Deblers requested the sheriff could be prejudicial only if taken in the light most favorable to Debler. After all, even if they said "the sheriff" rather than "an officer," they were calling the sheriff's office, and saying "the sheriff" could really mean "a sheriff's deputy." Looking at the argument as a whole, this misstatement was brief and apparently inadvertent. There was no miscarriage of justice in the trial court's not sua sponte declaring a mistrial.

Third, Debler complains about the prosecutor's reference to a disturbing-the-peace complaint against him. Debler similarly objects to the prosecutor's statement that no additional charges were filed against Debler because of his behavior during the arrest for disturbing-the-peace. Debler's objection about these last two statements is that they improperly referred to other crimes during the guilt phase. In fact, the arrest occurred about six hours before the murder. Obviously, a trial court should closely scrutinize evidence of other crimes. *See State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). Such evidence is admissible when necessary to create a complete picture of the crime. *Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). This evidence, like evidence of the lengthy feud between the Deblers and Fisk, helped show the mindset of Debler and his brother on the night of the murder. The trial court had discretion to allow the prosecutor to refer to these incidents in his opening statement.

### 2. Brent Debler's Statement

Debler claims that the trial court erred in admitting a police officer's testimony that Debler's brother, Brent, said: "We set up the fucking gun." Brent blurted out this statement, about 15 hours after the murder, at the Cedar County Sheriff's Office in the middle of a conversation between Brent and his mother, immediately after the officer returned to the room. At trial, the State claimed that this statement was admissible because: 1) it qualified as an excited utterance; and 2) the defense "opened the door" by asking the officer if he took a statement from Brent.

Both sides agree that the statement was hearsay because offered to prove the truth of Brent's statement, not that he made a statement. In general, the admission of hearsay evidence against a defendant violates his right to confront the witnesses against him. *Bruton v. United States*, 391 U.S. 123, 135–37, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968). Hearsay evidence may be admissible if it falls within a "firmly rooted" exception or shows "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990).

The State claims that the statement falls within a traditional exception— the excited utterance exception. The test for excited utterance is whether it was "made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event." *State v. Van Orman*, 642 S.W.2d 636, 639 (Mo.1982). The time or place does not control this determination. *Id.* In the present case, while the passage of time—about 15 hours—and the change of location is relevant, the controlling fact is that this utterance was not the product of the shock of the murder, but rather the emotion of talking to his mother. Therefore, the statement was not admissible as an excited utterance.

Alternatively, the State claimed at trial that the defense opened the door by asking the police officer whether he took a statement from Brent. The State argued that, if it could not introduce the content of the statement, the jury would—despite general instructions not to speculate on evidence not admitted—infer that the statement was favorable to Debler, and not to

the State. "[W]here the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). In *Lingar*, however, the defense repeatedly raised the issue in question—the content of a plea agreement. *Id.* at 734. Here, the defense merely referred to the existence of the statement. Such minimal discussion does not raise a sufficient negative inference to justify admitting the statement to rebut the alleged inference. Brent's statement was not admissible under this theory.

■■■ It was error to admit Brent's statement. The only issue is prejudice. Debler argues that the statement is prejudicial because it countered the defense theory that Brent acted alone. This argument ignores Debler's confession that both he and Brent were involved in the murder. In his confession, Debler stated: "It was Brent who set the gun up there and I ran the string." As to whose idea it was, Debler said: "Just kinda both of us together. We were just talking about what we could do to get some attention." Brent's statement added nothing to Debler's confession.

Debler also argues, however, that allowing the jury to consider Brent's statement undercut Debler's recantation of his confession. Brent's statement was not the only evidence contradicting Debler's attempt to recant his confession. Debler's confession was relatively detailed, but Debler was unable to explain convincingly how he knew these details. His main explanation—that Brent told him while they were alone with their mother—was contradicted by testimony from an officer that they were not alone, and also by his mother's testimony about the meeting. While Debler claimed to be at a second friend's house watching a movie when Brent set up the trap gun, several police officers testified that they had called the first friend's house and talked to Debler *after* the time that Debler claimed he left to go to the

second friend's house. Thus, Debler's recantation was both internally inconsistent and contradicted by other witnesses.

In light of these circumstances, Brent's statement was cumulative; and its admission was harmless error. *State v. Ousley*, 668 S.W.2d 643, 645 (Mo.App.1984); *see also Harrington v. California*, 395 U.S. 250, 252–54, 89 S.Ct. 1726, 1727–28, 23 L.Ed.2d 284 (1969); *cf. Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–28, 17 L.Ed.2d 705 (1967) ("reasonable doubt" standard for harmless error).

### 3. Defendant Debler's Confession

At trial, Debler raised three bars to admitting his confession: 1) his allegedly illegal arrest; 2) the failure to cease questioning after he allegedly asked for a lawyer; and 3) his inability to knowingly and voluntarily waive his rights at the time of the confession. While Debler highlights only the last of these three in his appeal, some discussion of the other two is necessary.

At the scene of the crime, one officer placed the Deblers under a "twenty-hour probable cause homicide" arrest and read the Deblers their *Miranda* rights. Apparently, however, the Deblers were not immediately taken away. Given the feud between the Deblers and Fisk, it made sense to detain the Deblers at the scene and to keep them away from the house while the officers investigated. Prior to the search of the house, the treatment of the Deblers was analogous to a *Terry* stop supported by reasonable suspicion. *Cf. Terry v. Ohio*, 392 U.S. 1, 19–22, 88 S.Ct. 1868, 1878–80, 20 L.Ed.2d 889 (1968).

While not absolutely required, giving *Miranda* warnings at this time was an appropriate precaution. After the police searched the house, probable cause existed for a full-fledged arrest of the Deblers— after which *Miranda* warnings were repeatedly given. Taking the evidence in the light most favorable to the trial court, Debler did not request a lawyer between the time of the arrest and the time of his confession. During this time period, the Deblers repeatedly claimed that it must have been Fisk who killed LaRew.

Debler's last argument at trial—and the emphasis on appeal—against admitting the confession is that his mental and physical condition at the time of the confession prevented a knowing and voluntary waiver of his rights. The facts surrounding his confession are relatively clear. On the one hand, Debler had been awake for at least 24, and possibly over 36, hours before confessing and may have been drinking extensively for several hours before arrest. On the other hand, Debler continuously gave the police his version of the story beginning immediately after the shooting. The trial court could infer that Debler knew what he was doing before he discovered that the police believed he was lying.

■ The standards to determine whether Debler voluntarily waived his rights are relatively clear. The choice must be "uncoerced," and the defendant must be aware of his rights and the potential consequences of abandoning those rights. *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987). In the present case, defendant emphasizes voluntariness. Voluntariness depends on the absence of police overreaching, not on the mental ability of the defendant to make a "choice." *Colorado v. Connelly*, 479 U.S. 157, 169–70, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1987). Whether there was police overreaching depends on the circumstances, including the defendant's physical and mental state, and the length of questioning. *Spring*, 479 U.S. at 574, 107 S.Ct. at 857; *Connelly*, 479 U.S. at 170, 107 S.Ct. at 523.

■ On appeal, this Court reviews the evidence in the light most favorable to the trial court's ruling. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). Based on the evidence, the trial court could easily find that the Deblers planned from the outset to talk to the police and waive their rights, in order to implicate Fisk. A defendant has no right to protection from unexpected events during interrogation, unless the product of police trickery. *Spring*, 479 U.S. at 575–77, 107 S.Ct. at 858–59.

■ While some evidence pointed toward excluding the confession, neither the trial court nor the jury believed the confession was involuntary. *See* MAI–CR 3d 310.06. While defendant argues that he should have had the opportunity to catch up on his sleep, neither the United States nor the Missouri Constitutions prohibit the police actions in questioning Debler. The confession was admissible.

## 4. Submissibility of Murder in the First Degree

■ Debler complains that there was insufficient evidence to prove the mental state for murder in the first degree, particularly the element of deliberation.

Deliberation is "cool reflection for any length of time no matter how brief." § 565.002(3) RSMo 1986; MAI–CR 3d 313.-02. Like any other mental state, "[d]eliberation may be inferred from the circumstances surrounding the murder." *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

Debler emphasizes some evidence that arguably demonstrates he lacked the mental ability to deliberate. However, in reviewing the sufficiency of the evidence, the evidence "is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *Id.* The acts of setting up a trap and luring the victim into it are acts from which a jury can infer deliberation. Debler's argument on mens rea is without merit.

## 5. State's Closing Argument

Debler details several comments (and groups of comments) that he claims to be improper closing argument by the State.

First, Debler contends that the State erred by saying: "All the law requires is that the defendant is aware that his conduct that he's engaging in is practically certain to cause his death." Debler claims this misstates the law on mens rea. Out of context, this claim might be true. In the context of discussing the "knowing" element of mens rea, however, this statement

highlights the fact that the law does not require absolute certainty. The prosecutor discussed the "deliberation" element later. In its context, this statement was not improper.

Second, Debler contends that the State improperly told the jury to disregard the lesser-offense instructions: "This case is First Degree Murder or nothing." The prosecutor also noted that Debler's testimony was that he did not know about the gun, rather than that he knew but intended no harm. The defense attacked the State's case two ways: 1) someone else did it; 2) the trap gun was meant to scare the police, not kill anyone. With these comments, the State focused on the defense emphasized by Debler's own testimony—that someone else did it. The State cannot, of course, argue questions of law inconsistent with the instructions. *State v. Burnfin*, 771 S.W.2d 908, 912 (Mo.App.1989). These comments, however, represent the State's analysis of the defense theory. The failure of the trial court to sua sponte strike these comments does not constitute plain error.

Third, Debler objects to the argument that "Shelby called this sheriff out of his bed in the middle of the night," claiming that it misstates fact. Throughout this case, the word "sheriff" ambiguously referred to both LaRew and his officers. Debler's call did require an officer to show up in the middle of the night. Debler assumes the most negative reading—that Debler specifically intended that LaRew himself respond to the call. Unraveling ambiguous statements is difficult on appeal, which is why preservation of error is required. There is no plain error with regard to this statement.

Fourth, Debler complains about references to Brent's statement that both brothers were involved. Arguments from improperly admitted evidence are improper. *Burnfin*, 771 S.W.2d at 911. Defendant did not object on this ground to this argument; thus the argument is reviewed for plain error. While the trial court erred, as it did in admitting Brent's statement, its error is not manifest injustice.

Fifth, Debler objects to a series of arguments about "common knowledge" of how police enter buildings when a suspect might be inside. This argument contrasts whether defendant's acts were just "reckless," rather than both "knowing" and "deliberate." As the prosecutor noted, the fact that Debler was standing near LaRew at the critical moment permitted an inference of knowledge and deliberation. Even if invoking "common knowledge" might be error, it could not constitute manifest injustice.

Sixth, Debler complains about the prosecutor's discussion of the need to protect police upon whom common citizens must rely. This is not impermissible personalization. The State is allowed "to argue both the prevalence of crime in the community and for the personal safety of its inhabitants ...; and that conviction of defendant is part of the jury's duty to prevent crime." *State v. Olds*, 603 S.W.2d 501, 511 (Mo. banc 1980) (citations omitted).

Seventh, Debler objects to the State's arguments, such as: "this is the most cold-blooded murder that you could ever conceive of." In closing argument, a prosecutor may state conclusions that can be legitimately drawn from the evidence, and do not imply the possession of secret knowledge. *State v. Schwer*, 757 S.W.2d 258, 263 (Mo.App.1988). While the prosecution may have used hyperbole, the evidence supports it. These arguments were within the trial court's discretion, and thus not plain error.

Eighth, Debler complains about a statement by the prosecutor that "the judge has instructed you, this is premeditated." Defendant alleges this statement impermissibly implies that the court has prejudged the case. In isolation, this statement might be impermissible. *Cf. State v. Williams*, 646 S.W.2d 107, 110 (Mo. banc 1983). The statements in the *Williams* case were repeated several times, were more direct, and were the subject of defense objections. *Id.* at 108–09. The rule sought by Debler would grant a new trial for minor misstatements, to which no objection was made. No plain error occurred.

## B. Instructions

Debler raises two issues about the instructions that affect the guilt phase. First, Debler objects to a pamphlet entitled "Information for Trial Jurors," which he claims was given to jurors before trial. Because Debler provides no proof that the jurors received the pamphlet, there is no error.

Second, Debler objects to the giving of MAI–CR 3d 302.04—the "reasonable doubt" instruction—citing *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). He makes a similar argument against MAI–CR 3d 313.30, which repeats the definition of reasonable doubt for the penalty phase. This argument is without merit. *State v. Mease*, 842 S.W.2d 98, 112 (Mo. banc 1992); *State v. Whitfield*, 837 S.W.2d 503, 511 (Mo. banc 1992).

## IV. Rule 29.15 Motion for Post–Conviction Relief—Guilt Phase Issues

Debler alleges that the motion court erred in refusing post-conviction relief on claims such as: 1) ineffective assistance of counsel by not preserving trial errors, which were raised on direct appeal as plain error; 2) the application of Rule 29.07 to his case; 3) denial of "offers of proof" during the motion hearing; and 4) other claims of ineffective assistance of counsel.

### A. Failure to Preserve Trial Error

Debler claims that trial counsel was ineffective for not preserving trial error by not objecting to several improper questions, statements, or instructions. A party claiming ineffective assistance of counsel must prove: 1) that the attorney failed to exercise the skill of a competent attorney; and 2) prejudice resulted from that incompetence. *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984).

The requirement of prejudice precludes finding ineffective assistance for not making nonmeritorious objections. *Sidebottom v. State*, 781 S.W.2d 791, 799 (Mo. banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Debler's

claims about the failure to object to questions during voir dire, the instruction on reasonable doubt, and most of the guilt phase arguments are without merit for the reasons outlined above in discussing those alleged trial errors.

True, a few statements by the prosecutor during opening and closing arguments may have been objectionable. With one exception discussed below, none of these statements were clearly improper. To prove ineffective assistance of counsel, a movant must overcome the presumption that counsel is competent. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. This presumption especially applies to silence in the face of allegedly improper arguments. Counsel must, often in an instant, decide whether to object to argument, balancing the probability of a successful objection, the degree of the argument's prejudice, the possibility of a negative jury reaction to the interruption of the opponent's argument (despite instructions to the contrary), and the danger of highlighting the opponent's argument. Therefore, unless the argument is clearly improper, failure to object is not ineffective assistance of counsel.

The only argument that was clearly objectionable was the reference to Brent's statement. As shown by the discussion of the admission of that statement, no prejudice resulted from this argument; therefore, no prejudice resulted from the failure to object to it.

### B. Constitutionality of Rule 29.07

Debler claims that proceedings under Rule 29.07(b)(4) are unconstitutional. Debler's claim is that a Rule 29.07(b)(4) proceeding is a "critical stage" of the criminal justice system, and, therefore, by the Sixth Amendment, he has a constitutional right to counsel at the 29.07(b)(4) proceeding, which must include effective assistance of counsel.

The Rule 29.07(b)(4) proceedings are not a critical stage of the criminal justice system. Proceedings under Rule 29.07(b)(4) are effectively a "preliminary hearing," on ineffective assistance of counsel, for post-

conviction relief. The rule restricts the trial court to a narrow determination: whether probable cause exists to believe defendant received ineffective assistance of counsel. This proceeding does not replace an evidentiary hearing under Rule 29.15(h), where a movant is typically represented by counsel under Rule 29.15(e). In a Rule 29.07(b)(4) proceeding, the court limits itself to examining the defendant as to specific complaints and determining whether such complaints demonstrate probable cause that counsel was ineffective.

Here the trial court's inquiry adequately followed Rule 29.07(b)(4). Debler complains specifically only about the use of one part of these proceedings against him—his reference to witnesses that he gave to trial counsel, but that were not called.

Debler suffers no prejudice from this use of the Rule 29.07(b)(4) proceeding. The motion court granted an evidentiary hearing on the failure of trial counsel to call other witnesses. These claims were denied in part due to failure to present necessary evidence. Because the claims were denied on other grounds, the consideration of the Rule 29.07(b)(4) proceedings was not prejudicial.

### C. Refusals of Evidence

Debler complains about the refusal of the motion court to admit certain testimony and exhibits. He further alleges that this evidence would demonstrate a basis for relief, and thus that the motion court erred. The refused evidence includes: 1) evidence on the composition of jury panels; 2) the testimony of Vickie Livengood; 3) the testimony of Dr. Lee Evans; and 4) the testimony and affidavit of juror Heather Meyers.

### 1. Composition of Jury Panels

■ The motion court refused all evidence on the composition of jury panels in Clay County. The State claims that this issue is not cognizable in post-conviction motions. *State v. Six*, 805 S.W.2d 159, 173 (Mo. banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Because Debler alleges that trial counsel was inef-

fective in not raising this claim at trial, this claim is cognizable under Rule 29.15.

The excluded evidence shows that, over a two-year period, the venires in Clay County consistently underrepresented females. This evidence meets two prongs of the test for whether venire selection is unconstitutional. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) (representation of females on venires must be fair in relation to population). Unfortunately for Debler, the evidence does not demonstrate "systematic exclusion" of females—the third prong. *Id.*

One excluded witness would have testified that the composition of Clay County venires was so skewed that it was extremely unlikely to have resulted from truly random selection. The system described, however, is facially random. No witness suggested why the system produced skewed results. In fact, Debler's venire was within the range of acceptable deviation from a "perfect" representation of the population. Debler has not shown that his venire should have been quashed.

Additionally, no evidence demonstrated that Debler's trial attorney had a basis to believe that a motion to quash the venire was appropriate at the time of trial. Thus, not only was no prejudice shown, but also there was no showing of counsel's ineffectiveness.

### 2. Testimony of Vicki Livengood

■ The motion court excluded, as hearsay, testimony of Vicki Livengood about statements made by Faith Lee Burns. Debler claims trial counsel was ineffective by not calling Livengood to impeach Burns's statements that undercut Debler's alibi.

The motion court did fail to distinguish between two types of evidence: statements of uncalled witnesses, as opposed to evidence of trial counsel's acts. Statements of uncalled witnesses are normally admissible at a Rule 29.15 hearing to demonstrate what the witness would have said if called at the original trial. The motion court then considers whether the testimony would have been admissible at trial as part of

determining whether not calling the witness demonstrates prejudice and shows that counsel was ineffective.

The motion court erred in excluding the evidence and then ruling that no evidence was presented. This error is harmless because the motion court also found that no evidence was presented that counsel knew or should have known about the availability of the uncalled lay witnesses. A trial counsel is not a psychic. Unless someone somehow identifies a potential witness, trial counsel cannot be ineffective for not investigating that witness. *Cf. Green v. State*, 792 S.W.2d 15, 17 (Mo.App.1990). Because there was no evidence that anyone ever identified Livengood as a potential witness to trial counsel, Debler is not entitled to relief.

### 3. Expert Testimony on the Voluntariness of Debler's Confession

■■■ Debler complains about the exclusion of testimony by Dr. Evans on Debler's ability to voluntarily and knowingly waive his rights because of Evans's lack of expertise on this subject.

As with Livengood, the motion court misinterpreted its role in this ruling. Again, the issue was what testimony Evans—or another similarly qualified expert—might have presented at trial or at a hearing on the motion to suppress the confession. Evans had extensive qualifications in pharmacology and some in psychology. The trial court would have had discretion to allow Evans to testify on voluntariness. *See State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992).

Because it should have considered Evans's testimony—and because there was similar evidence admitted from other expert witnesses called by Debler—the motion court clearly erred in holding that *no* evidence was presented that the confession was involuntary or that counsel was ineffective in his attempt to suppress the confession. However, this error is harmless because the evidence was insufficient.

■■■ The expert testimony on the effects of Debler's prior substance abuse and alleged head injuries does not negate his ability to voluntarily and knowingly confess. As noted, the ability of a defendant to voluntarily confess springs from the absence of police coercion, not the defendant's mental condition. *Colorado v. Connelly*, 479 U.S. 157, 169–71, 107 S.Ct. 515, 522–24, 93 L.Ed.2d 473 (1987). Likewise, a defendant may knowingly confess if he understands that he may remain silent and that the evidence may be used against him. *Colorado v. Spring*, 479 U.S. 564, 573–74, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987). There is no requirement that the defendant fully understands all potential consequences of the confession. *Id.*

The only part of the experts' testimony that arguably undermines admission of the confession is the testimony on the effects of sleep deprivation. The fact of sleep deprivation was, however, before the judge and jury; the expert testimony adds very little to the common sense understanding of the effects of sleep deprivation.

Therefore, Debler was not prejudiced by the lack of expert testimony on issues related to his confession.

### 4. Juror's Testimony and Affidavit

■■■ Debler alleges that the motion court should have allowed juror Heather Meyers to testify or considered her affidavit. The motion court correctly excluded this evidence. Debler proposed to use her testimony to prove prejudice from his attorney's alleged incompetence. Allowing this evidence would permit a juror to impeach the verdict. This is impermissible. *Amrine v. State*, 785 S.W.2d 531, 535–36 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

### D. Other Claims of Ineffective Assistance at Guilt Phase

Debler raises four additional claims related to the guilt phase or to the remand for resentencing.

### 1. Mental Defect

█ Debler alleges that trial counsel should have introduced evidence of a "mental disease or defect." *See § 552.010 RSMo 1986; § 552.030 RSMo 1986.* The motion court found, supported by the record, that Debler elected not to proceed with this defense. The motion court also found that Debler was mentally competent.

█ The defendant has the right to make such basic decisions as whether to plead guilty or go to trial, what defenses to present at trial, and whether to testify. *Cf. State v. Thomas,* 625 S.W.2d 115, 123–24 (Mo.1981). The attorney advises the client on the effect of these choices and then implements the client's decision. *Cf. id.* Because Debler elected not to present a defense of mental disease or defect during the guilt phase, trial counsel was not ineffective for not presenting this defense.

### 2. Change of Venue

█ Debler claims that trial counsel was ineffective for agreeing to move the trial to Clay County. The evidence presented to the motion court, at best, indicated that the trial judge might have a propensity for imposing the death penalty. There was no evidence that juries in the area had such a propensity. There was no indication that either had a propensity to convict. There was, thus, no prejudice, especially during the guilt phase.

### 3. Failure to Indict

Debler alleges that trial counsel was ineffective in not seeking to dismiss the charges for lack of an indictment. The Missouri Constitution allows Debler to be charged by either indictment or information. Mo. Const. art. I, § 17. The Fifth Amendment requirement of an indictment in all criminal cases applies only to federal crimes, not state crimes. *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). Failure to file meritless motions is not ineffective assistance of counsel.

### 4. Unconstitutionality of Missouri's Death Penalty Provisions

Debler asserts his counsel's ineffectiveness for failing to file a motion challenging the constitutionality of Missouri's procedure for imposing the death penalty. These exact challenges to the death penalty were rejected in *State ·v. Whitfield,* 837 S.W.2d 503, 514–15 (Mo. banc 1992).

### V. Penalty Phase

#### A. Instructions

Debler alleges plain error in the submission of MAI–CR 3d 313.44—the "Mitigating Circumstances" instruction—claiming two flaws.

The first alleged flaw is that MAI–CR 3d 313.44 requires unanimity as to particular mitigating circumstances. This claim misreads the instruction, which only requires a unanimous vote to impose the sentence of life imprisonment. The instruction allows each juror to reach his or her own conclusion on each mitigating circumstance. It, thus, does not violate the requirements of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). *See State v. Ervin,* 835 S.W.2d 905, 926 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

The second alleged flaw is that the instruction says "may consider" rather than "must consider" in discussing the mitigating circumstances. Debler contends this semantic distinction is meaningful. The instruction requires the jury to consider whether mitigating circumstances outweigh aggravating circumstances, and then lists those specific mitigating circumstances that the defense believes should be considered. The instruction, taken as a whole, tells each juror to consider those listed circumstances that he or she believes to be true. As such, the instruction is in compliance with constitutional requirements governing the submission of mitigating circumstances. *See Schneider v. State,* 787 S.W.2d 718, 721 (Mo. banc), *cert. denied,* 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 186 (1990).

## B. Evidence and Arguments

With respect to evidence and arguments during the penalty phase, Debler alleges error in the State's opening and closing arguments, and the use of prior "bad acts."

### 1. State's Opening Argument

██ Debler objects to the discussion during most of the opening argument about evidence of prior "bad acts" that the State later introduced. The prosecutor may refer in opening argument to evidence that the State intends to introduce, including evidence that is arguably admissible but is later excluded. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981). As the trial court admitted this evidence, and Debler attacks the its admissibility, the propriety of the State's opening statement depends on the admissibility of the evidence, discussed below.

### 2. Closing Argument

Debler alleges that several comments in closing argument were impermissible and that the trial court plainly erred by not sua sponte striking them or declaring a mistrial.

First, the prosecutor highlighted the evidence of Debler's prior bad acts. The propriety of this argument depends on the admissibility of the evidence, discussed below.

Second, the State made several arguments based on history and the Bible, which were problematic. First, the State invoked these references; then the defense put a "spin" on them, and then the State twisted them again in rebuttal. The end result turns argument into one of competing theologies and histories, obscuring the instructions of the court. The decision between life and death should not turn on the most compelling Scriptural parallel or the best historical analogy. Because the sentence is being reversed on other grounds, this Court need not decide whether this constituted plain error; but both sides should avoid excessive Biblical and historical references.

██ Third, Debler objects to the alleged interjection of the prosecutor's personal beliefs. Merely using "I" and "you" does not automatically interject personal beliefs into the case. *Cf. State v. Matthews*, 790 S.W.2d 271, 272 (Mo.App.1990). Debler also claims that reference to "crazy Arabs" was an improper racially-based argument. While such statements are not stellar examples of proper closing arguments, it is not so clearly improper and prejudicial as to be plain error.

Lastly, Debler attacks the State's arguments that certain potential mitigating arguments were just excuses that did not justify mercy, and that Debler did not deserve mercy. Debler correctly states his right to jury consideration of the mitigating circumstances. The State, however, may argue that those circumstances do not warrant reducing the penalty from death. These arguments were not plainly erroneous.

### 3. Admissibility of Prior Bad Acts

Debler contests the admissibility of evidence about his prior conviction for unlawful use of a weapon and his drug dealings with Danny Fisk. While reviewed for plain error, the real issue is whether this evidence was relevant to the jury's decision.

██ In general, both the State and the defense are allowed to introduce any evidence regarding "any aspect of defendant's character." *§ 565.032.1(3) RSMo 1986 & RSMo Supp.1992; see also State v. Six*, 805 S.W.2d 159, 166–67 (Mo. banc), *cert. denied*, — U.S. —, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). The decision to impose the death penalty, whether by a jury or a judge, is the most serious decision society makes about an individual, and the decision-maker is entitled to any evidence that assists in that determination. *Cf. State v. Isa*, 850 S.W.2d 876, 902–03 (Mo. banc 1993); *State v. Smith*, 781 S.W.2d 761, 769 (Mo. banc 1989), *vacated on other grounds*, 495 U.S. 916, 110 S.Ct. 1944, 109 L.Ed.2d 306 *aff'd on remand*, 790 S.W.2d 241 (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990).

■ Evidence detailing the circumstances of Debler's prior conviction is admissible since this conviction was submitted as a nonstatutory aggravating circumstance. The evidence enables the jury to consider the seriousness of this circumstance. *State v. Whitfield,* 837 S.W.2d 503, 511–12 (Mo. banc 1992).

■ The extensive evidence of drug dealing in New Mexico is different. The State did not submit this behavior as a nonstatutory aggravating circumstance, and apparently never intended to submit it as a separate circumstance. Despite this fact, the State called Fisk to testify at length—and the prosecutor emphasized this evidence in both arguments—about criminal behavior for which Debler was never convicted.

A review of Missouri's death-penalty cases reveals that serious unconvicted crimes—including crimes for which the conviction is not yet final—are routinely submitted as nonstatutory aggravating circumstances. *See Six,* 805 S.W.2d 159 (Legal File at 206); *State v. Petary,* 781 S.W.2d 534 (Mo. banc 1989) (Legal File at 234–37), *vacated on other grounds,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 *aff'd on remand,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Mathenia,* 702 S.W.2d 840 (Mo. banc) (Legal File at 47–48), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *State v. Gilmore,* 661 S.W.2d 519 (Mo. banc 1983) (Transcript at 762), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).[2]

The defendant is entitled, at some point, to require the State to indicate the aggravating circumstances as permitted by law, which the State intends to submit to the jury for its consideration. In this case, that point was the instruction conference before the penalty phase when the trial court required the State to offer its instructions. After that point, extensive evidence of unconvicted drug dealing—as was pre- sented in this case—is no longer relevant or admissible. As such, its admission was erroneous.

■ The question remains: whether the admission of an unconvicted crime was plain error constituting a manifest injustice. *Rule 30.20.* Because no jury or judge has previously determined a defendant's guilt for uncharged criminal activity, such evidence is significantly less reliable than evidence related to prior convictions. To the average juror, however, unconvicted criminal activity is practically indistinguishable from criminal activity resulting in convictions, and a different species from other character evidence. Missouri law recognizes that prior criminal activity should be a key consideration for the death penalty. *§§ 565.032.1(3), 565.032.2(1), 565.032.3(1) RSMo 1986.*

Clearly, extensive evidence of unconvicted drug dealing is highly prejudicial. If instructed on the drug dealing, the jury, before considering this circumstance, must unanimously find beyond a reasonable doubt that Debler was involved in a conspiracy to distribute drugs with Fisk— thereby curing some of the unreliability of this evidence. MAI–CR 3d 313.41. Without such an instruction, it is possible that some jurors took this evidence into account while applying a lesser standard of proof. Such consideration would clearly violate the statutory standards governing the death penalty. *§ 565.030.4 RSMo 1986.*

In this case, the admission of extensive evidence of an unconvicted crime in the penalty phase is plainly erroneous and constitutes manifest injustice. Debler's sentence is reversed, and a new sentencing hearing granted. *§ 565.035 RSMo 1986.*

### VI.

The conviction is affirmed; the sentence is reversed; the overruling of the Rule 29.15 motion is affirmed with respect to conviction and dismissed as moot with re-

---

**2.** Evidence of unconvicted crimes may also be admitted when the defense submits the specific statutory mitigating circumstance of "no significant history of prior criminal activity," *§ 565.- 032.3(1) RSMo 1986. See State v. Jones,* 749 S.W.2d 356, 364 (Mo. banc) (Legal File at 151), *cert. denied,* 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988).

spect to sentence; the case is remanded for a new sentencing hearing.

All concur.