Thaddeus THOMAS, a Minor, BY AND THROUGH his Next Friend, Marlin THOMAS, and Marlin Thomas and Ma Sheryll Joy Thomas, Individually, Appellants,

v.

MERCY HOSPITALS EAST COMMUNITIES, d/b/a Mercy Hospital-Washington, and Mercy Clinic East Communities, Respondents.

No. SC 96034

Supreme Court of Missouri, en banc.

Opinion issued August 1, 2017

Rehearing Denied September 12, 2017

The Thomases were represented during arguments by Bradley L. Bradshaw, an attorney in Springfield, (417) 889-1992.

The medical providers were represented by Kenneth W. Bean and Mohsen P.K. Pasha of Sandberg Phoenix & von Gontard PC in St. Louis, (314) 231-3332.

Laura Denvir Stith, Judge

Plaintiffs appeal the judgment entered by the trial court in favor of defendant hospitals following a jury trial. Plaintiffs allege the trial court abused its discretion by failing to strike for cause prospective juror 24 because she expressed a disqualifying bias in favor of defendants under section 494.470.1.[1] This Court does not agree. Prospective juror 24 did not say she had knowledge concerning the "matter or any material fact in controversy" from which to form an opinion requiring her disqualification under subsection 1. The trial court did not abuse its discretion in finding, without additional questioning, she was rehabilitated when the entire voir dire was considered, including her later statement that she could follow the trial court's

---

1. All statutory references are to RSMo, Supp. 2013, unless otherwise indicated.

instructions. *See section 494.470.2.* The trial court was in the best position to determine whether the prospective juror was disqualified. This Court affirms.

## I. BACKGROUND

On March 13, 2013, plaintiffs filed a lawsuit alleging medical negligence in connection with the Caesarean-section delivery of Thaddeus Thomas, claiming defendants caused him to sustain brain damage. During voir dire, plaintiffs' counsel informed the venire panel, "[T]his case involves Mercy Clinics, Mercy Clinic Physicians, as the defendant and Mercy Clinic Hospital. Just knowing that they are defendants in this case, is there anyone that feels they might start off the case a little bit more in favor of one party or the other?" Prospective juror 24 raised her hand, and the following exchange took place:

JUROR: Is Big St. John's and this hospital affiliated?

PL COUNSEL: Probably—well, you called it St. John's, and I used to call them St. John's because I grew up in Missouri. But I think—I would—

JUROR: It's Mercy.

PL COUNSEL: Yeah, that's it, right.

JUROR: But it used to be called St. John's so.

PL COUNSEL: Right. And you will—the child was eventually transferred to Mercy, Big Mercy as you called it, at some point.

JUROR: That's what they call it.

PL COUNSEL: Okay. So the same question, because you know people there, know—have some knowledge of that and a relationship with that organization indirectly, would you tend to give them more credibility or that defendant maybe, in this case the local one, start off—

JUROR: I don't think so.

PL COUNSEL: Okay. I think I hear where you're going with this, but as a lawyer, I have to try to make sure things are clear. You say you don't think so, but later on you did decide you were—they started off a step in advance, that would be—

JUROR: Well, I've heard my sister have lots of opinions of St. John's so, you know.

PL COUNSEL: So ultimately, can you sit through this whole case without starting off a little bit in favor of Mercy or St. John's, as you call them, or would you start off with them having a touch in favor of them?

JUROR: I don't—maybe—yeah, probably.

PL COUNSEL: Maybe you would be slightly in favor of them?

JUROR: Yep, probably.

PL COUNSEL: Okay. And, you know, that's—that's all I'm trying to get is the best answer you can give, and you seem confident in that answer; is that correct?

JUROR: Uh-huh.

PL COUNSEL: Okay. Thank you.

After that exchange, defendants' counsel asked to approach the bench and the parties and judge discussed prospective juror 24's answers. Plaintiffs' counsel expressed doubt that prospective juror 24 could set aside her bias, while defendants' counsel stressed "the ultimate question" was whether the prospective juror would set aside prejudice and follow the trial court's instructions. Before deciding whether the prospective juror was qualified, the trial court stated it would give counsel the opportunity to rehabilitate her. Plaintiffs' counsel then continued to question prospective juror 24:

PL COUNSEL: ... So just to be clear, I've asked you about if you'd tend to

start out maybe just a little bit, even just a touch, in favor of one side or the other. I haven't asked you the other question, which is: If the judge gives you an instruction, will you read that instruction and follow that instruction to the best of your ability?

JUROR: Yes.

PL COUNSEL: Okay. It doesn't change where you are in your past experiences as far as knowledge and understanding of your relationship to the defendant; is that also fair?

JUROR: Yes.

PL COUNSEL: Okay. Thank you.

Defendants' counsel later questioned the prospective juror as follows:

DEF COUNSEL: Thank you. You rolled your eyes once when [Plaintiffs' counsel] was asking you questions. You probably thought I wasn't looking, and I wasn't sure if that was a good thing or a bad thing, so I've got to ask. You probably don't remember it, but let me—let me look at my notes for a second. So I think you indicated that your sister—sister works as a registered nurse at Big St. John's.

JUROR: Yeah.

DEF COUNSEL: You did not think that had an impact. You heard lots of things from your sister.

JUROR: She's worked there 25 years.

DEF COUNSEL: She's worked there 25 years. Same place?

JUROR: Burn ICU—ICU unit.

DEF COUNSEL: Oh, the burn unit.

JUROR: Yes.

DEF COUNSEL: That's a great unit. You said you may be unfair, but then you told us you would follow the instructions. So here's the question: Your sister's a nurse, there are claims against nurses here. Can you put that aside and assure the Court that you will do your

level best currently to decide this case based on what you hear in this courtroom, not what your sister has told you, not anything about Mercy, just on the evidence from that box and the judge's instructions?

JUROR: Yes. I've heard good and bad. I've heard both.

DEF COUNSEL: We both have, and there's nothing wrong with that. Okay. She doesn't work in obstetrics, does she?

JUROR: No, burn unit.

DEF COUNSEL: Okay.

Plaintiffs moved to strike for cause prospective juror 24, arguing, "She went back and forth" and that defendants' counsel only "said, Will you do your best, and she said yes. But again, she said earlier she may be unfair." The trial court disagreed with plaintiffs and overruled the motion to strike. Prospective juror 24 was seated as a juror and took part in the verdict. The case proceeded to trial on March 16, 2015, and the jury returned a verdict for defendants on March 26, 2015. Plaintiffs moved for a new trial, challenging the trial court's overruling of their motion to strike prospective juror 24. The trial court denied plaintiffs' motion for a new trial, and plaintiffs appealed. After opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, § 10.*

## II. STANDARD OF REVIEW

"[T]he determination of the juror's qualifications is a matter for the trial court in the exercise of sound judicial discretion, and an appellate court will reject the trial court's determination only upon a clear showing of abuse of discretion." *Joy v. Morrison, 254 S.W.3d 885, 888 (Mo. banc 2008)* (emphasis omitted). "Generally, the trial court has wide discretion in determining the qualifications of prospective jurors, and its decision will not be disturbed

absent deprivation of a fair trial." *Catlett v. Ill. Cent. Gulf R.R.*, 793 S.W.2d 351, 353 (Mo. banc 1990). "The trial court is in the best position to evaluate a venireperson's qualifications to serve as a juror and has broad discretion in making the evaluation." *Joy*, 254 S.W.3d at 888 (quotation omitted).

## III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY FINDING PROSPECTIVE JUROR 24 WAS NOT DISQUALIFIED BECAUSE SHE WAS SUCCESSFULLY REHABILITATED

■ Litigants have a constitutional right to trial by a fair and impartial jury of twelve qualified jurors. *Mo. Const. art. I,* § 22(a); *Catlett*, 793 S.W.2d at 353. "The competent juror must be in a position to enter the jury box disinterested and with an open mind, free from bias or prejudice." *Catlett*, 793 S.W.2d at 353 (quotation omitted). The trial court is in the best position to evaluate a potential juror and is afforded broad discretion in determining whether the potential juror is ultimately qualified to serve. *See, e.g., Joy*, 254 S.W.3d at 888; *State v. Christeson*, 50 S.W.3d 251, 264 (Mo. banc 2001); *State v. Johnson*, 22 S.W.3d 183, 188 (Mo. banc 2000); *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990); *McClain v. Petkovich*, 848 S.W.2d 33, 35 (Mo. App. 1993).

Section 494.470, provides in relevant part:

1. ... [N]o person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person ... shall be sworn as a juror in the same cause.

2. Persons whose opinions or beliefs preclude them from following the law as declared by the court in its instructions are ineligible to serve as jurors on that case.

■ As *State v. Debler*, 856 S.W.2d 641, 645 (Mo. banc 1993), explained, section 494.470 describes two types of bias. Section 494.470.1 identifies "[o]ne type of bias involv[ing] venirepersons ... who have formed an opinion on the material facts of the case." *Id.* "The other type of bias focuses on opinions about 'larger issues.'" *Id.* This Court reaffirmed and applied the distinction *Debler* drew:

between the disqualifying bias of those who have formed an opinion on the material facts of the case, *see § 494.470.1*, and other types of bias that are merely "opinions about 'larger issues'"—opinions that all prospective jurors will have to some extent.

*Ray v. Gream*, 860 S.W.2d 325, 333 n.1. (Mo. banc 1993), quoting *Debler*, 856 S.W.2d at 645. *Ray* concluded, "Under § 494.470.2, that type of bias is disqualifying 'only if [the prospective jurors'] views would preclude following the instructions given by the court.'" *Id.*, quoting *Debler*, 856 S.W.2d at 645.

*Joy* provides a good example of this Court applying these principles in a medical malpractice case. The prospective juror admitted he was "substantially" troubled by "the issue of lawsuits against doctors" and indicated he "probably would be biased for the doctors." *Joy*, 254 S.W.3d at 892, 890. But the prospective juror also was asked if he could be "fair and unbiased if [he] were selected on this jury" and responded that he "could be fair." *Id.* at 890. He also stated neither side had "a real advantage," and he would be "fair and reasonable" in evaluating the evidence and the opinions of the other jurors. *Id.* Finally, all prospective jurors were asked whether they believed "they could not follow the trial court's instructions" or if they could "keep an open mind until [they had]

heard all of the evidence," and the prospective juror did not respond. *Id.* The plaintiff argued the prospective juror should have been disqualified under subsection 1. *Id. at 889.* This Court disagreed, holding the prospective juror had formed no opinion about the "material facts of the case" that would constitute a disqualifying bias under subsection 1 because the prospective juror did not have "any knowledge concerning the matter or any material fact in controversy" but rather "only had basic information, such as the fact that the litigation involved a medical malpractice action." *Id. at 889.*

Similarly, in *Ray*, this Court was asked whether certain prospective jurors had been successfully rehabilitated after initially indicating a bias in favor of family members contesting a will and against non-family members who were proponents of the will because the prospective jurors generally believed property should go to family members. *860 S.W.2d at 326-27.* The prospective jurors also indicated they could "follow the law that the [c]ourt gives [them] and the evidence that comes from this witness stand." *Id. at 330-31.* This Court stated, "Opinions formed, but not of a fixed character, and which readily yield to evidence, do not disqualify the juror." *Id. at 332-33* (quotation omitted). Accordingly, it held "the jurors in question did not exhibit the degree of bias which would automatically disqualify them from serving and that the trial court appropriately considered the testimony of those jurors that they could set aside their stated bias and serve impartially." *Id. at 334.*

▮ Here, like the prospective jurors in *Joy* and *Ray*, prospective juror 24 had no "knowledge concerning the matter or any material fact in controversy" from which to form an opinion requiring her disqualification under subsection 1. She only said her sister worked as a nurse in a separate hospital affiliated with defendants through a larger group and in the burn unit rather than in obstetrics, she had heard good and bad about the other hospital, and while she might start out "slightly" in favor of the hospital or nurses as a result, she could put that slight tilt aside and follow the trial court's instructions. The knowledge she said she had was not specific to the case or parties but was the sort of generalized knowledge or opinions *Joy* held did not constitute knowledge concerning the matter or material facts of a case and was not disqualifying if the prospective juror was able to set it aside and follow the trial court's instructions.

Even if the prospective juror's bias was only a general one, plaintiffs argue she did not unequivocally say she could set it aside and follow the trial court's instructions. The trial court and parties recognized in their discussions during voir dire that the prospective juror's initial responses did indicate a generalized slight bias. When asked, "So ultimately, can you sit through this whole case without starting off a little bit in favor of Mercy or St. John's, as you call them, or would you start off with them having a touch in favor of them," she responded, "I don't—maybe—yeah, probably." When asked, "Maybe you would be slightly in favor of them," she responded, "Yep probably."

▮ Had questioning ceased at that point, plaintiffs are correct that the prospective juror's answers would have been equivocal. If counsel had not asked further and established an unequivocal response that prospective juror 24 could set aside any bias and judge the case fairly and impartially, the trial court would have been obligated to do so before seating the juror, for "where a venireperson's answers are equivocal as to his or her qualifications to be a juror, it is incumbent upon the trial judge to question the juror further to ei-

ther confirm the lack of qualifications to serve, or to rehabilitate the venireperson." *Rodgers v. Jackson Cnty. Orthopedics, Inc., 904 S.W.2d 385, 387-88 (Mo. App. 1995).* In such a situation, "failure by a trial judge to question independently a potential juror to explore possible prejudice may undercut any basis for a trial judge's exercise of discretion and constitute reversible error." *Joy, 254 S.W.3d at 891.*

 But here, counsel for both plaintiffs and defendants asked additional questions of prospective juror 24. Her initial reservations, therefore, must be considered in the context of the entire voir dire in deciding whether she showed an ability to be impartial, *id.*, because "[m]ere equivocation is not enough to disqualify a juror," *id. at 890.* Rather:

> If the challenged venireperson subsequently reassures the court that he can be impartial, the bare possibility of prejudice will not deprive the judge of discretion to seat the venireperson. [*McClain, 848 S.W.2d at 35.*] Initial reservations expressed by venirepersons do not determine their qualifications; consideration of the entire voir dire examination of the venireperson is determinative. *State v. Feltrop, 803 S.W.2d 1, 8 (Mo. banc 1991).*

*Id. at 890-91.*

These principles apply directly here. Prospective juror 24 specifically stated she would not give defendants more credibility than plaintiffs. She also explained her slight bias arose not out of personal experience but rather on general opinions her sister expressed based on her experience as a nurse in the burn unit of a related, but different, Mercy hospital. When asked, "Can you put that aside and assure the Court that you will do your level best currently to decide this case based on what you hear in this courtroom, not what your sister has told you, not anything about Mercy, just on the evidence from the box and the judge's instructions?" prospective juror 24 answered, "Yes. I've heard good and bad. I've heard both."

Plaintiffs place great emphasis on the fact that defense counsel asked whether prospective juror 24 would "do [her] level best" to set aside any bias she might bring into the courtroom, not whether she absolutely could set aside that bias. The cases on which plaintiffs rely, however, all involved situations in which the prospective juror's answer contained equivocation. *See, e.g., State v. Lovell, 506 S.W.2d 441, 443 (Mo. banc 1974).* Here, prospective juror 24 expressly stated yes, without qualification, she could follow the trial court's instructions. Plaintiffs' counsel chose not to explore this issue further by asking a question that did not include the words "do your level best." The record did show, however, that she did not respond affirmatively when all prospective jurors were asked whether they had "such a good experience with either the hospital here or somewhere else" that would cause them to start off in favor of the hospital or whether anybody had a problem "finding against a corporation if they believe the corporation was negligent."

 In these circumstances, it was up to the trial court to evaluate the prospective juror's answers and determine whether she could be impartial and follow the trial court's instructions. It was not improper for the trial court to rely on the juror's assessment of her own ability to be impartial:

> [T]he self-assessment of prospective jurors that they can set aside their bias is, in most cases, sufficient evidence, in and of itself, to support the trial court's determination that the juror is not disqualified. ... Indeed, reliance on such evi-

dence is the common and long-accepted practice of our trial courts.

*Ray, 860 S.W.2d at 334.*[2]

The trial court independently considered the entire voir dire examination, determined prospective juror 24's unequivocal testimony indicated she had been successfully rehabilitated, and found she was qualified to serve on the jury. This Court cannot agree with plaintiffs that the trial court abused its broad discretion by allowing prospective juror 24 to serve on the jury.

## IV. CONCLUSION

This Court affirms the trial court's judgment.

Fischer, C.J., Draper, Wilson, Russell and Breckenridge, JJ., concur. Powell, J., not participating.

---

**2.** *Accord, Joy, 254 S.W.3d at 888* ("[I]t is proper for the trial court to consider the juror's testimony concerning his or her ability to act impartially. The trial court is not prohibited from basing its determination on the opinions or conclusions of the jurors, but the trial court must make an independent determination of the juror's qualifications. That task is accomplished when the trial court reviews and evaluates the juror's conclusions and weighs them against the earlier admissions of prejudice.") (citations omitted).