119 F.Supp.2d 971 (2000)
Timothy JOHNSTON, Petitioner,
v.
Michael BOWERSOX, Respondent.
No. 4:98CV452-DJS.
United States District Court, E.D. Missouri, Eastern Division.
November 2, 2000.
*972 *973 *974 *975 *976 Timothy Johnston, Mineral Point, MO, pro se.
Michael J. Gorla, St. Louis, MO, Christopher E. McGraugh, Leritz and Plunkert, St. Louis, MO, for Timothy Johnston.
Frank A. Jung, Attorney General of Missouri, Asst. Atty. Gen., Jefferson City, MO, for Michael Bowersox.

MEMORANDUM OPINION AND ORDER
STOHR, District Judge.
In the early morning hours of June 30, 1989, Nancy Johnston, the wife of petitioner Timothy Johnston, died after being brutally beaten. The victim was declared dead at the scene by paramedics responding to a 911 call placed by petitioner from their home. On May 16, 1991, a jury in the Circuit Court of the City of St. Louis found petitioner guilty of first degree murder and armed criminal action, and on May 18 the jury returned sentences of death for the murder offense and life imprisonment for the armed criminal action offense. Judgment and sentence in accordance with the jury's verdicts were rendered by the court on July 26, 1991. No relief was granted petitioner in either his direct appeal or postconviction proceedings in the state courts. The United States Supreme Court denied Johnston's petition for a writ of certiorari.
Petitioner, with the assistance of appointed counsel, has now filed in this Court a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting thirty-three grounds for relief from his conviction and sentence. One claim, Ground 32, has been voluntarily dismissed. See Order of October 1, 1998 [Doc. # 14]. The matter is fully briefed. The State expressly concedes that the requirement of exhaustion of state remedies has been met for each of petitioner's remaining grounds for relief. The petition having been filed on August 14, 1998, federal law as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("the AEDPA") applies unless otherwise noted.

Ground 1: The Exclusion for Cause of Juror Osborne Brown
In Ground One, petitioner challenges the trial court's striking venire member Osborne Brown for cause based on his views concerning the death penalty. Brown's initial responses to the prosecutor's *977 voir dire questions suggested an inability to impose the death penalty under any circumstances. In essence, petitioner argues that the juror was effectively rehabilitated by the defense's questioning and the resulting shift in the juror's responses to indicate a willingness to consider the death penalty. The State's response relies upon Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), in which the Supreme Court clarified the standard for determining when a venire member in a capital case may be excluded for cause based on his views concerning the death penalty. The Court held that such a strike is permissible when the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with the jury instructions and his oath. Id. at 424, 105 S.Ct. 844. In addition, the Court held that the existence of such a bias supporting a strike for cause need not be proved with "unmistakable clarity." Id. Instead, the Court acknowledged that even in the absence of clarity in the printed record, "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." Id. at 425-26, 105 S.Ct. 844.
Witt further addresses the degree of deference a federal habeas court owes to state court determinations concerning juror bias. Construing the pre-AEDPA standard of 28 U.S.C. § 2254(d), the Supreme Court held that a trial court's determination of juror bias concerning capital punishment is a credibility-based fact determination subject to § 2254(d)'s presumption of correctness. Subject to certain limitations, then-section 2254(d) applied a presumption of correctness to any "determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction...evidenced by a written finding, written opinion, or other reliable and adequate written indicia." As amended by the AEDPA, § 2254(e)(1) more simply provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that the petitioner's burden is to rebut the presumption "by clear and convincing evidence."
The trial court determined that juror Brown's initial statements of opposition to capital punishment evinced sufficient "equivocation" and "vacillation" as to his ability to follow the law as instructed to justify excusing him for cause. Resp. Exh. A-II, p. 454. Both in the first and last of the three rounds of questioning by counsel, juror Brown stated that he did not "believe in" the death penalty, but his responses as to whether he could consider it in light of the evidence did shift during the course of voir dire. Id. at 427-430, 443, 448-450. On this record, if this Court's review were for error in the trial court's determination, the Court would find none. As the trial court stated, juror Brown's answers were "illogical and inconsistent" so as to reasonably support a conclusion that his views would substantially impair the performance of his duties as a juror. Subjecting the issue to the presumption of correctness which applies pre- or post-AEDPA further bolsters the denial of habeas corpus relief. Furthermore, "where the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one." Witt, 469 at 431, 105 S.Ct. 844. Petitioner makes no showing by clear and convincing evidence that the trial court's factual determination was incorrect or that it applied an erroneous legal standard to the issue.

Ground 2: The Refusal of Strikes for Cause Against Jurors Flamm, Grawitch and Ewertz
In Ground Two, petitioner argues that venire members Flamm, Grawitch and Ewertz each displayed a bias in favor of capital punishment which should have resulted in strikes for cause. Under the Witt standard previously enunciated in connection with Ground 1, these jurors were subject to strikes for cause if the record supported a determination that they would be unable to faithfully and *978 impartially apply the law. Petitioner's contrary evaluation of the record responses of these prospective jurors does not constitute clear and convincing evidence to overcome the finding of the trial court, affirmed by the Missouri Supreme Court, that the jurors did not have a bias requiring them to be struck for cause. This finding is therefore presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1). Furthermore, as with Ground 1, were the Court to engage in its own evaluation of the correctness of the trial court's determination, it would conclude that the record of these jurors' voir dire responses adequately supports the determination that the jurors need not be struck for bias.

Ground 3: Batson Issues
Petitioner's third ground for relief is that the prosecution violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it exercised peremptory challenges against five female African-American venire members  Retha Bornett, Doris Young, Gloria Cunningham, Marcia Cashaw, and Yvette Billington. The State contends that as to venire member Billington this ground is procedurally defaulted because it was not raised in the state courts on direct appeal or on appeal from the denial of petitioner's postconviction motion, but petitioner explains that the challenge was made and addressed in those proceedings although the accidental references to juror Billington by her first rather than last name make the issue more difficult to locate in the state court record.
The parties cite different United States Supreme Court decisions for contrary principles concerning the deference a federal habeas court owes to a state trial court's determination of pretext. The State's citation to Purkett v. Elem, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), is the pertinent one, as it specifically considers the presumption of correctness as to a Batson pretext finding. Petitioner cites only a generalized discussion of fact findings subject to the presumption in Thompson v. Keohane, 516 U.S. 99, 110, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). The Eighth Circuit has subsequently cited Elem for the proposition at issue:
Whether a race-neutral explanation is pretextual for discrimination is a question of fact ... and in "habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are `not fairly supported by the record.'" Purkett, 514 U.S. at [769], 115 S.Ct. at 1771.
Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir.1996). As with the preceding two grounds largely controlled by a presumption of correctness, petitioner's argument that the factual issue was wrongly decided does not constitute clear and convincing evidence that the trial court's factual finding was erroneous, as required under the AEDPA to overcome the presumption. The Court has reviewed those portions of the trial transcript pertinent to these issues, and is persuaded that the trial court's rejection of the defense's Batson challenges is fairly supported by the record.

Ground 4: Jury Selection Closed to the Public
In Ground Four, petitioner asserts that his right to a public trial was violated when the trial court conducted voir dire on the state holiday for Harry S Truman's birthday, when the courthouse was closed to the public. The State argues that the Missouri Supreme Court's refusal to conduct plain error review of this claim, which was not properly preserved for appellate review, constitutes a procedural bar to its consideration by this Court, citing Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), and Roberts v. Bowersox, 137 F.3d 1062, 1064 (8th Cir.1998). Petitioner disagrees with this procedural contention and argues instead that because the Missouri Supreme Court chose not to address the merits, 28 U.S.C. § 2254(d) does not apply and this Court should review the claim de novo, citing Clemmons v. Delo, 124 F.3d 944, 947-49 (8th Cir.1997), *979 James v. Kentucky, 466 U.S. 341, 348-49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), and Liegakos v. Cooke, 106 F.3d 1381, 1385 (7th Cir.1997).
Although none of the parties' citations is directly on point, the Court's conclusion coincides with respondent's. The Eighth Circuit has applied the principle urged by the State: "Because the state court refused to review for plain error, we are procedurally barred from reviewing this claim." Bittick v. Nixon, No. 98-3729, slip op. at 4, 1999 WL 641133 (8th Cir. Aug.24, 1999), citing Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir.1997). The conclusion logically derives from the current state of the law in the Eighth Circuit as noted in Hornbuckle, namely that where the state court does conduct plain error review, the federal habeas court may choose between enforcing the procedural bar and reviewing the claim under the same limited plain error standard applied by the state court. Where the state court declines to conduct plain error review of a defaulted point, the procedural bar must remain intact. Even if the Court were to consider the state court to have conducted sufficient review to determine the absence of "manifest injustice or miscarriage of justice," this Court would opt to treat the procedural bar as intact. See Roberts v. Bowersox, 61 F.Supp.2d 896, 912 (E.D.Mo.1999). Petitioner therefore fails to establish a right to relief on Ground 4.

Ground 5: Potential Bias of Juror Doris Liston
Petitioner contends in Ground Five that his due process rights were violated when venire member Doris Liston failed to disclose during voir dire that she had previously served on a jury in a capital case tried by the same prosecutor in which the jury recommended the death sentence. As with the prior ground, the State argues that the Missouri Supreme Court's refusal to conduct plain error review of this claim preserves a procedural bar to its consideration by this Court. For the reasons stated above with respect to Ground Four, the Court concludes that there exists a procedural bar to consideration of the merits of this ground for relief.
In an attempt to excuse his default, petitioner asserts that the factual basis for jury misconduct claims was not readily available to him within the time limits of Rule 29.15. Petitioner's citations to the state court's repeated denials of his motions for access to jury information appear to be the proffered "objective external factor" impeding counsel's ability to comply with 29.15's time limits and excusing the default. Pet. Traverse [Doc. # 27], p. 18. Petitioner does not indicate that these denials were ever reversed, however, and petitioner fails to explain how counsel ultimately obtained the necessary information and why counsel could not have done so earlier in the same manner.
Even so, the Court would conclude that petitioner is not entitled to relief on the merits of Ground 5. In order to succeed, petitioner must show not only that a juror failed to disclose a material fact during voir dire, but also that the juror was in fact biased. See Fuller v. Bowersox, 202 F.3d 1053, 1056 (8th Cir. 2000), citing McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) and Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The state motion court was not persuaded that bias had been shown. Resp. Exh. F-VI, p. 930. That finding is subject to the presumption of correctness. See Smith v. Phillips, 455 U.S. 209, 218, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The Court would therefore conclude that petitioner is unable to show that the juror's prior exposure to the prosecutor in another capital case created a bias against the defense.

Ground 6: Ineffective Assistance of Counsel in Relation to Voir Dire of Juror Doris Liston
In this ground, petitioner asserts that his trial counsel was constitutionally ineffective *980 for his failure to elicit from Ms. Liston during voir dire the fact of her prior jury service on a capital case tried by the same prosecutor. As with the previous two grounds, the State argues that the Missouri Supreme Court's refusal to conduct plain error review of this claim constitutes a procedural bar to its consideration by this Court. Again, for the reasons stated above with respect to Ground Four, the Court concludes that there exists a procedural bar to consideration of the merits of this ground for relief. In addition, the lack of a demonstration of actual bias on the part of the juror defeats the showing of prejudice necessary to relief on an ineffective assistance of counsel claim.

Ground 7: Jury Deliberations Concerning Possibility of Release
Petitioner next contends that his due process rights were violated because, during its deliberations in the penalty phase, the jury discussed and considered their concern that he might eventually be released from prison if sentenced to life imprisonment. The State contends that this ground is procedurally defaulted because it was not raised in the state courts on direct appeal or on appeal from the denial of petitioner's postconviction motion. In response, petitioner cites that portion of his appellate brief urging the claim. Resp. Exh. G, p. 114-18. Again, however, as with the previous three grounds, the failure to timely raise the claim in his state postconviction motion and the Missouri Supreme Court's refusal to conduct plain error review create a procedural bar to this Court's review of the claim on the merits. As before, petitioner's assertion of an external impediment to discovery of the factual basis of the claim is insufficiently detailed to excuse the default, as petitioner fails to demonstrate how the alleged facts were ultimately discovered and why they could not have been discovered earlier by the same means.

Ground 8: Composition of the Grand Jury

Ground 9: Composition of the Venire Panel
In Ground 8, petitioner asserts that his indictment is constitutionally invalid in view of the systematic exclusion of minorities and young people from the grand jury. In a similar vein, petitioner next argues that the petit jury was selected from a venire panel from which minorities and young people were systematically excluded. The Supreme Court has set forth the following prima facie showing for violations of the fair cross-section requirement:
[T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Petitioner's argument concerning young people appears to focus on the 21 to 29 age group. Upon consideration of the relevant Eighth Circuit precedent, and the cases cited therein, the Court is not persuaded that this classification is a "distinctive" group within the meaning of Duren. See Brewer v. Nix, 963 F.2d 1111, 1112 (8th Cir.1992), and cites therein; United States v. Olson, 473 F.2d 686, 688-89 (8th Cir.1973).
As to both youth and minorities, petitioner fails to show that any underrepresentation results from "systematic exclusion" in the selection process, as Duren requires. "Systematic" in this context means "inherent in the particular jury-selection process utilized." Duren, 439 U.S. at 366, 99 S.Ct. 664. The state court's reliance upon voter registration and driver's license lists as sources of potential jurors does not systematically exclude *981 either "twenty-somethings" or minorities for Sixth Amendment purposes. The Eighth Circuit has "consistently upheld the use of voter registration lists to select jury pools." United States v. Sanchez, 156 F.3d 875, 879 (8th Cir.1998). Furthermore,
Ethnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the "systematic exclusion" of allegedly under-represented groups. Absent proof that certain racial or ethnic groups face obstacles in the voter registration process, [appellant's] claim must fail.
Id. The same can be said of driver's license lists, which are likely to be more diverse and inclusive than voter rolls. Petitioner's additional allegations, such as those concerning the selection of grand jurors from volunteers among the petit jurors and the jury commissioner's granting of extensions, do not carry the day, either, in that they do nothing to establish systematic exclusion of any distinctive group. Because it finds that petitioner has failed to make the necessary prima facie case, the Court concludes that petitioner is not entitled to relief on Grounds 8 and 9.

Ground 10: Prosecutorial Misconduct
Petitioner argues that his due process rights were violated by four species of misconduct by the prosecutor at trial. The first is the prosecutor's alleged failure to timely disclose statements made by petitioner. Four such instances of untimely disclosure are enumerated in the petition: Officer Maier's disclosure at the May 3, 1991 suppression hearing of statements allegedly made by petitioner; Deputy Wagganer's allegations of statements made by petitioner, disclosed the week before trial; the testimony of Michael Federhofer, the victim's stepson, during the guilt phase of trial that, during the events the night of the murder, petitioner told Michael that if he called the police, petitioner would kill him too, and; Ben Fitter's testimony during the penalty phase about a prior incident in which petitioner had threatened to kill Fitter and his family.
"Federal habeas relief is not concerned with violation of state discovery rules[.]" Gardner v. Dixon, 966 F.2d 1442, 1992 WL 119879, *9 (4th Cir.1992), citing Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Instead, as a general rule, "[p]rosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process." Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir.1998); see also Bradford v. Gomez, 951 F.2d 358, 1991 WL 276444, *1 (9th Cir.1991) [applying the principle in a discovery context]. The analyses of prosecutorial misconduct and any related claim of trial court error in the admission of evidence merge into a single analysis under the applicable due process standard. Anderson v. Goeke, 44 F.3d 675, 678 n. 2 (8th Cir.1995).
The issue for this habeas court thus becomes whether the admission of these belatedly-disclosed statements fatally infected the trial with unfairness. The Court concludes that it did not. Petitioner's challenge in this context is not premised upon an allegation that the statements were inadmissible, but instead on the asserted unfairness of surprise to the defense. Petitioner fails to demonstrate an unconstitutional degree of unfairness because he offers no explanation how the defense might have more effectively countered the evidence had it had more notice of the statements. The Court is not persuaded that a due process violation is shown.
The second variety of prosecutorial misconduct asserted in Ground 10 is the prosecutor's alleged endorsement of Deputy Wagganer on the first day of trial. Although stated in the summary description of four species of misconduct averred in Ground 10 (see Petition [Doc. # 10], p. 48), the discussion section associated with Ground 10 addresses only three points and *982 does not address the issue of Wagganer's late endorsement (id. at 49-52). Instead, the claim concerning the belated endorsement of Wagganer appears to be reiterated and more fully treated in Ground 11, the next ground for relief. The Court will therefore address the claim in its discussion of Ground 11.
Next is petitioner's claim that the prosecutor elicited irrelevant and prejudicial evidence of prior bad acts and inflammatory characterizations. The challenged evidence includes an emergency medical technician's testimony that the murder involved the "most brutal beating" he had seen in 25 years, and Deputy Wagganer's testimony that on a peace disturbance call several years before another officer had warned Wagganer to be careful because petitioner was involved. Because the factual evidence at trial clearly established that the victim had suffered a brutal beating, the emergency medical technician's characterization did not inject prejudicial unfairness into the trial so as to offend due process. Wagganer's testimony in the penalty phase suggesting that petitioner had a reputation for dangerousness was not unduly prejudicial given the quantum of evidence otherwise before the jury demonstrating petitioner's temper and tendency to violence. For example, the remark at issue occurred during testimony concerning an incident in which petitioner kicked and punched at police officers and threatened to kill them. Petitioner's statements to police after the murder, which were heard by the jury, included his admissions that he punched and kicked his wife repeatedly the night of the murder. Viewed in relation to the entire trial record, neither of the complained of remarks infected the trial with an unconstitutional unfairness.
As for prior bad acts, petitioner focuses on the introduction of evidence of petitioner's prior altercations with, and threats to kill, his wife. More specifically, this evidence consists of the stepson's testimony that he once previously had seen his stepmother with black eyes and a swollen, bruised face after an argument with petitioner, and the testimony of Deputy Wagganer as to petitioner's angry threats concerning his wife in the early months of 1989 while the couple was still living in Jefferson County. Again the Court concludes, given the overall context of the trial record and the strong evidence of petitioner's guilt, that this evidence was not unfairly prejudicial, and certainly not so prejudicial as to deprive the trial of fundamental fairness. No unconstitutionality has been shown.
Lastly, the prosecutor is alleged to have repeatedly referred to weapons which were unrelated to the murder. The evidence at trial suggested that firearms were involved in the petitioner's conduct on the night of the murder in at least two ways. First, during his angry ransacking of the house prior to his wife's arriving home, petitioner shot at a television set and at a water bed. Second, a rifle was apparently used in the beating of the victim, to the point that the rifle was broken in two. In this context, brief references during guilt phase testimony to the presence of other firearms found in the house that night was not prejudicial to the defense. Neither was highly indeterminate testimony elicited from Deputy Wagganer during the penalty phase concerning a handgun he received from petitioner's wife during his response to the disturbance call in Jefferson County. Because the testimony failed to establish whether petitioner, his wife or someone else had possessed or used the gun that evening, the testimony can be criticized for lack of relevance, but can hardly be said to be particularly prejudicial to petitioner. Again, no due process violation is shown. The Court will therefore deny relief on Ground 10.

Ground 11: Testimony of Deputy Wagganer
Petitioner complains that on the first day of trial the court permitted the State belatedly to endorse Deputy Wagganer as an additional guilt phase witness, *983 in violation of petitioner's due process rights. The defense was aware of the State's intention to call Wagganer in the guilt phase no later than May 3, 1991, and Wagganer was not called to testify until some 11 days later on May 14. Even if the admission of Wagganer's testimony was contrary to state discovery rules, the Court finds no due process violation. Petitioner fails to demonstrate how the evidence would have been countered with more ample notice, and so fails to show that he was unfairly prejudiced by the late designation of the witness.
In addition, petitioner argues that the admission into evidence (through Wagganer's testimony) of uncounseled statements indicating two prior threats to his wife in the six months prior to her death violated his constitutional rights. The Missouri Supreme Court's rejection of this ground for relief correctly cites McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), for the proposition that the Sixth Amendment right to counsel is offense specific. In other words, even assuming that a right to counsel attached at the time of petitioner's January and February 1989 conversations with Wagganer, it attached only with respect to prosecutions then underway against him. Id. The absence of counsel has no constitutional implications for the use of any statements against petitioner in the subsequent and unrelated prosecution at issue here. Ground 11 is without merit and does not entitle petitioner to habeas corpus relief.

Ground 12: Illegally Obtained Confession
In Ground 12, petitioner asserts that his confession was unconstitutionally obtained by confronting him with evidence seized during an unlawful warrantless search of his home. Contrary to petitioner's assertions, the portion of the record cited by petitioner does not support the necessary predicate that physical evidence prompted petitioner to confess. The detective who obtained petitioner's confession testified repeatedly that petitioner confessed after being told that his initial accounts concerning his wife's death were inconsistent with the statements of witnesses. Resp. Exh. A-I, pp. 32, 34, 36, 37. Ground 12 is therefore found to be without merit.

Ground 13: Sufficiency of the Evidence as to Deliberation
Petitioner next argues that there was insufficient evidence to support a reasonable finding of deliberation, an essential element of first degree murder, and that instead the evidence showed that petitioner killed his wife in the heat of anger and passion. Due process forbids a criminal conviction unless the evidence before the jury was sufficient to enable rational jurors to find every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The applicable standard for federal habeas corpus review under § 2254 is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319, 99 S.Ct. 2781 (emphasis in original). Furthermore, the law does not require that a conviction be supported by direct rather than circumstantial evidence, so long as the evidence as a whole satisfies the applicable burden of proof to support the required findings. United States v. Jackson, 204 F.3d 812, 814 (8th Cir.2000); Hill v. Norris, 96 F.3d 1085, 1088-89 (8th Cir.1996) (rejecting a habeas petitioner's claim "that the circumstantial evidence supporting his guilt is insufficient because it fails to exclude other factual scenarios consistent with his innocence").
Based on the evidence at trial, a rational trier of fact clearly could have found that the element of deliberation was proved beyond a reasonable doubt. The circumstances which rationally support such a finding are carefully enumerated in the Missouri Supreme Court's opinion in the case, and include the following: that *984 petitioner chased the victim down after an attempt to escape and continued beating her thereafter; that the beating resumed after what petitioner claimed was a mutual decision to return home; that petitioner ignored several witnesses' efforts to stop the beating; that petitioner interrupted the beating "long enough to drag [the victim] to the car, ignore a police inquiry, drive away in a manner that showed a desire to elude police, and changed the venue of the assault to a more private place, less susceptible to interruption;" and finally, that petitioner paused several times to fetch a new instrument with which to resume the beating. State v. Johnston, 957 S.W.2d 734, 747 (Mo.banc 1997). The Court concludes that the evidence of deliberation satisfies the constitutional standard set forth in Jackson.

Ground 14: The Prosecution's Closing Argument
In Ground 14, petitioner cites a list of twelve remarks made by the prosecution in closing argument which petitioner claims violated his due process rights. Petitioner does not dispute the State's assertion, which the Court's review of the record supports, that petitioner preserved only two of the twelve for appellate review by the Missouri Supreme Court. This Court's review of the merits of the claims as to the other ten is therefore procedurally barred.[1] "Improper argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair." Rodden v. Delo, 143 F.3d 441, 446 (8th Cir.1998), citing Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In the particular case of a due process challenge to closing argument in the penalty phase of a capital case on federal habeas review, the Court is to:
consider the type of prejudice that arose from the argument, what defense counsel did to minimize the prejudice, whether the jury received proper instructions, and whether there is a reasonable probability of a different sentencing decision absent the improper argument.
Rodden, 143 F.3d at 446.
Of the two claims reviewable by this Court, the first concerns the prosecutor's closing argument in the penalty phase referring to petitioner as "Satan" and invoking the names of Jesus Christ and God in seeking the death penalty. In fact, only a portion of this claim was preserved for review. The Missouri Supreme Court notes that only the objection to the use of "Satan" was preserved by the defense for direct appeal. Johnston, 957 S.W.2d at 750. The trial court sustained the defense objection, and the jury was instructed to disregard the reference. Resp. Exh. A-VIII, p. 1849. Although the comment was extreme, it was of a type generally permissible in the sentencing context, namely comment upon the character of the defendant. Antwine v. Delo, 54 F.3d 1357, 1364 (8th Cir.1995). The prejudice to petitioner therefore stems not from any categorical impropriety, but merely from the remark's excessiveness. That being so, and in view of the immediate instruction to disregard the remark and the overall evidentiary context concerning petitioner's character and conduct, the Court is not persuaded that there exists any reasonable probability that the reference to "Satan" affected the jury's decision to return a verdict for death.
The second reviewable comment is, in the Court's view, even less significant. Petitioner challenges the prosecutor's remark to the effect that domestic violence is "ten times more violent on the average" than run-of-the-mill street violence. Resp. Exh. A-VIII, p. 1868. The remark was objectionable for its claim of statistical fact not in evidence. Otherwise, it was merely hyperbolic description of *985 domestic violence generally. Because the jury had already heard evidence of the extreme and brutal violence employed by petitioner in the beating death of his wife, the prejudicial impact of the remark is de minimis. Examining the totality of the circumstances, the Court readily determines that there is no reasonable probability that this remark affected the outcome of the penalty phase. No relief is warranted on Ground 14.

Ground 15: Trial Counsel's Failure to Object During Closing Arguments
Trial counsel rendered ineffective assistance, petitioner contends, when he failed to make timely and appropriate objections to those portions of the prosecutor's closing arguments identified in Ground 14 above. The State makes no procedural default argument as to any of these alleged instances of ineffective assistance, and therefore the Court treats them on their merits. In addition to the reference to Satan and the domestic violence remark discussed above, trial counsel did in fact object contemporaneously to three more of the enumerated instances of allegedly improper argument, namely the remarks concerning defense counsel's role in obtaining medication for petitioner while in jail awaiting trial, the references to the prosecutor's and jurors' marriage oaths, and a statement about the weighing of the aggravating circumstance. As to these points, then, there can be no ineffective assistance for failure to object.
In order to prevail on a claim of ineffective assistance of counsel, movant must establish both that his counsel's performance fell below an objective standard of reasonable competence, and that counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland defines prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. The Court has carefully reviewed the final arguments of both counsel in both phases of the trial, and has considered both the alleged impropriety of the remaining seven topics of argument challenged by petitioner and the degree to which each was prejudicial to the defense. The Court readily concludes that no ineffective assistance of counsel is shown under the Strickland standards. This is so because for each of the enumerated issues, the prosecutor's argument was not in fact objectionable and/or because the prejudicial impact was insignificant in the overall context of the evidence and argument presented to the jury, such that the remarks could not have had an impact on the outcome of either stage of the trial. Upon careful consideration, Ground 15 is found to be without merit.

Ground 16: Jury Instructions Concerning Reasonable Doubt
Petitioner next asserts that the trial court violated his due process rights by failing, in response to a question from the jury, to clearly indicate that a guilty verdict required a unanimous determination that each element of the offense had been proven beyond a reasonable doubt. Instead of directly answering the jury's question in the affirmative, as the defense advocated, the court responded merely by telling the jury to be guided by the instructions previously given.
Although the jury's apparent confusion, as expressed in its note to the Court, is troubling, petitioner does not suggest that the appropriate analysis differs from that ordinarily applied by a federal habeas court to an instructional issue. Petitioner cites Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In McGuire, the Supreme Court indicated that a federal habeas court inquires "`whether the ailing instruction by itself so infected the trial that the resulting conviction violates due process.'" McGuire, 502 U.S. at 72, 112 S.Ct. 475, quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, *986 38 L.Ed.2d 368 (1973). Furthermore, the issue is to be determined based on the context of the instructions as a whole and the trial record, and the inquiry focuses on whether "`there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id., quoting Boyde, 494 U.S. at 380, 110 S.Ct. 1190.
Petitioner does not suggest that the Court's guilt phase instructions were themselves inadequate on the requirement of unanimity and the necessity of finding all elements of an offense, but only that the fact of the question and the potential unhelpfulness of the Court's response are sufficient to warrant relief. On the applicable standard, the Court is unpersuaded that the jury's question and the Court's answer establish a "reasonable likelihood" that the jury did not ultimately determine that Missouri law required their unanimity. Presumably, given the Court's directive, the jury would have searched the written instructions which had been given them for the answer to their confusion. That being the case, and because they asked no further question on the subject, it does not appear reasonably likely that they did not deduce the correct conclusion from the verdict directors' requirement of proof beyond a reasonable doubt as to "each and all" elements of an offense and the later instruction requiring unanimity.
Furthermore, the habeas standard is a constitutional one. Petitioner's argument focuses on the requirement of unanimity, without any citation to authority that the requirement in petitioner's case derived from the U.S. Constitution as opposed merely to state law. Petitioner cites In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and United States v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), but those cases merely stand for the proposition that proof beyond a reasonable doubt as to each element of an offense is required by the due process clause. Gaudin and Winship do not speak to unanimity. Albeit in non-capital cases, the Supreme Court has held that neither the due process clause nor the Sixth Amendment require unanimous verdicts in state criminal cases. Johnson v. Louisiana, 406 U.S. 356, 363, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); Apodaca v. Oregon, 406 U.S. 404, 406, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). For these several reasons, then, no constitutional violation has been demonstrated and relief on Ground 16 will be denied.

Ground 17: Lesser Included Offense
The trial court refused to instruct the jury on voluntary manslaughter as a lesser included offense, and petitioner argues that the failure violated his right to due process and right to be free from cruel and unusual punishments, citing Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). As petitioner notes, the relevant definition of voluntary manslaughter under Missouri law, found at § 565.023.1(1), requires that the defendant "caused the death under the influence of sudden passion arising from adequate cause." Furthermore, as petitioner also recognizes, "sudden passion" within the meaning of this definition is "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(7).
The trial court's rejection of the instruction was based on his conclusion that there was insufficient evidence to support a rational jury finding of "sudden passion arising from adequate cause." Resp. Exh. A-V, p. 1595-6. This Court, having reviewed the entire trial transcript, is entirely in agreement with that determination. The evidence indicated that petitioner was highly agitated and was already engaging in destructive behavior prior to the commencement of the fatal encounter with the victim upon her arrival at their home. Petitioner's aggression toward the victim began with the already highly provoked petitioner's leaping on the hood of the car, and there exists no evidence of a sudden provocation *987 by the victim at the time the beating commenced.
The constitutional violation established in Beck occurs only where the evidence would have supported the verdict sought by the defense on the lesser included offense. Beck, 447 U.S. at 627, 100 S.Ct. 2382. In petitioner's case, because the evidence failed to support the giving of the voluntary manslaughter instruction, the trial court's refusal to give it did not violate petitioner's constitutional rights. Furthermore, in Beck, no lesser included offense was submitted to the jury in a capital case. Here, by contrast, the lesser included offense of second degree murder was submitted, and the jury nonetheless convicted petitioner of the greater offense. In these circumstances, there can have been no prejudice to petitioner from the failure to submit an additional and even lesser offense. Relief on Ground 17 will be denied.

Ground 18: Prior Bad Acts as Aggravating Circumstances
In Ground 18, petitioner asserts that his rights under the Fifth and Eighth Amendments were violated by the jury's improper consideration of certain prior bad acts as aggravating circumstances. More specifically, petitioner challenges the State's use of evidence of prior bad acts in the penalty phase when the jury received no instructions concerning prior bad acts as aggravating factors. The State argues that the Missouri Supreme Court's refusal to conduct plain error review of this claim constitutes a procedural bar to its consideration by this Court. Consistent with the Court's analysis of this same argument in connection with Grounds 4, 5 and 6 above, the Court here concludes that consideration of the merits of Ground 18 is procedurally barred for the reasons urged by the State.

Ground 19: Ineffective Assistance Relating to Prior Bad Acts as Aggravating Circumstances
Next petitioner argues that his counsel's failure to object to the admission and consideration of the prior bad acts at issue in Ground 18 constituted ineffective assistance of counsel. The State contends that this ground is procedurally defaulted because it was not raised in the state courts on appeal from the denial of petitioner's postconviction motion. In his traverse, petitioner cites to portions of his consolidated appeal brief to the Missouri Supreme Court in which he does in fact challenge trial counsel's ineffectiveness on this point. See Resp. Exh. G, pp. 89,[2] 90.[3] The Court will therefore review the claim on the merits.
The Court first considers whether trial counsel's failure to object constituted performance which fell below an objective standard of reasonable competence. Petitioner states the allegedly objectionable circumstance succinctly as follows: "the prosecutor presented, and the jury relied on, evidence of aggravating circumstances, i.e., prior bad acts of petitioner, not instructed upon by the trial court so as to leave the jury with unguided discretion to impose the death penalty." Petition [Doc. # 10], p. 70. Stated another way, petitioner alleges that counsel failed to object even though "this evidence of prior unadjudicated bad acts was not relevant to any aggravating circumstances submitted to the jury, and should not have been admitted." Traverse [Doc. # 27], p. 62. The sole aggravating circumstance submitted to the jury, in Instruction No. 17, was that the murder involved torture and depravity of mind and was therefore outrageously and wantonly vile, horrible and inhuman. See Resp. Exh. C, p. 368.
*988 In support of his contention that an objection was proper, petitioner cites three Missouri cases. Two of the three cases post-date petitioner's trial, and therefore, even if directly on point, cannot be said to have constituted established law of which a competent counsel should have known. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. 2052. The 1989 decision which pre-dated petitioner's trial is State v. Burnfin, 771 S.W.2d 908 (Mo.App.1989), in which the Missouri Court of Appeals held that it was improper for a prosecutor, in closing argument, to suggest that in determining the defendant's guilt the jury consider his prior aggressive acts, in direct violation of the court's instruction that the jury not consider facts from the medical record on the issue of guilt. Burnfin is distinguishable from petitioner's trial because it was not a capital case, because it involved the issue of guilt rather than punishment, and because the evidence argued by the State had already been determined inadmissible for the purpose argued. For all these reasons, Burnfin does not support the proposition which petitioner argues his trial counsel should have urged by objection.
State v. Roberts, 948 S.W.2d 577 (Mo. banc 1997), a capital case and one of the two post-trial decisions petitioner cites, does not appear to support his proposition at all.[4] In it, the Missouri Supreme Court holds that the prosecutor's references in penalty phase closing argument to prior bad acts and uncharged crimes was not improper, and defense counsel's failure to object not ineffective, because the evidence was originally adduced by defendant in support of an unsuccessful defense during the guilt phase. Id. at 595.
More pertinent to petitioner's contentions is State v. Debler, 856 S.W.2d 641, 657 (Mo.banc 1993), in which the Missouri Supreme Court reversed a death sentence, holding that extensive evidence of unconvicted drug dealingwhich was not submitted as a nonstatutory aggravating circumstance was erroneously admitted. For several reasons, Debler fails to persuade the Court that petitioner's trial counsel was ineffective. First, as previously noted, Debler was decided almost two years after petitioner's trial in May 1991. Second, Debler itself states several principles at odds with petitioner's contentions:
In general, both the State and the defense are allowed to introduce any evidence regarding "any aspect of defendant's character." Id. at 656, citing § 565.032.1(3) R.S.Mo.
The decision to impose the death penalty ... is the most serious decision society makes about an individual, and the decision-maker is entitled to any evidence that assists in that determination. Id.

A review of Missouri's death-penalty cases reveals that serious unconvicted crimes...are routinely submitted as nonstatutory aggravating circumstances. Id. at 657.
Evidence of unconvicted crimes may also be admitted when the defense submits the specific statutory mitigating circumstance of "no significant history of prior criminal activity[.]" Id. at 657, n. 2.
Missouri law recognizes that prior criminal activity should be a key consideration for the death penalty. Id. at 657.
Third, although Debler expresses concern, based on Missouri statutory interpretation, that the jury should have been instructed that consideration of the drug dealing required a unanimous finding that it had been proven beyond a reasonable doubt, at least one federal Court of Appeals has held that application of such a standard in this context is not constitutionally required. See Turner v. Johnson, 106 F.3d 1178, 1188-89 (5th Cir.1997). Furthermore, and finally, the holding in Debler has since been construed by the Missouri *989 Supreme Court to focus on the issue of notice, rather than the proposition for which it is cited by petitioner: "Since the decision in Chambers, this Court has consistently held that the error in Debler was lack of notice." State v. Ervin, 979 S.W.2d 149, 158 (Mo.banc 1998), referring to State v. Chambers, 891 S.W.2d 93 (Mo.banc 1994).
For all the reasons explained above, the Court concludes that the Missouri cases relied on by petitioner fail to show that competent counsel should have objected to the evidence of the prior bad acts in the absence of a corresponding aggravating factor. The Court's own research has unearthed no federal authority for the proposition, either. The Court therefore does not find that trial counsel's failure to object fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Petitioner has not shown an entitlement to relief on the basis asserted in Ground 19.

Ground 20: Jury Instructions on Mitigating Circumstances
Petitioner asserts that the trial court failed to give a jury instruction identifying the statutory mitigating circumstances supported by the evidence and restricted the jury's consideration of mitigating circumstances, resulting in a death sentence which violates the Fifth and Eighth Amendments. The second prong of the argument is misplaced, as Instruction 19 did include the language petitioner erroneously asserts was omitted, namely that "You may also consider any circumstances which you find from the evidence in mitigation of punishment." Resp. Exh. C, p. 370. As the argument is not reiterated in the traverse, it appears to have been abandoned. In any event, it is without merit.
The principal argument of Ground 20 concerns the two of petitioner's eleven proffered mitigating circumstances which the trial court refused to give. In Delo v. Lashley, 507 U.S. 272, 277, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993), the Supreme Court held that: "Nothing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them." Petitioner cites Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Penry v. Lynaugh, 492 U.S. 302, 320, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which stand for related propositions that do not diminish the impact here of the holding of Lashley that "state courts need give jury instructions in capital cases only if the evidence so warrants." Lashley, 507 U.S. at 275, 113 S.Ct. 1222.
The constitutional question thus turns on whether the evidence supported submission of the requested circumstances. The first of these circumstances was stated by petitioner as follows: "The defendant has no significant history of prior criminal activity." In the penalty phase, the jury heard evidence suggesting that petitioner had previously assaulted his wife and a former girlfriend, had on several occasions purposely caused substantial damage to the property of others, and had threatened bodily injury to his wife and others.[5] On this evidentiary record, the conclusion that defendant had no "significant" history of "criminal activity" was unwarranted. This Court is readily persuaded that the trial court's refusal to give the instruction was not erroneous, and much less did it violate the Constitution. This is especially so where the trial court did submit a different circumstance concerning criminal history which the defense requested, namely that "The defendant has no prior felony convictions." That submitted circumstance was factually accurate.
The second circumstance which the Court refused to include in the instructions was: "Whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Petitioner's citations to the record on the issue of his intoxication, to *990 pages 1337, 1347 and 1286-96 of the trial transcript, do not support his assertion that on the night of the victim's death his drinking was "out of control." Two of the three cited portions of the record do not include any mention of alcohol; the third indicates only that upon his return to the house the night of the beating, he had a large bottle of beer with him. Petitioner cites pages 1314-15, 1336 and 1469 of the trial transcript in support of the assertion that the evidence supported a conclusion that petitioner was provoked by the fear that his wife was planning to leave him. The cited testimony does not support that conclusion. The requested mitigator about impaired capacity was not reasonably supported by the evidence at trial, and the court's refusal to submit it was not violative of the Constitution. No relief is warranted on Ground 20.

Ground 21: Unlawfully Obtained Evidence Supporting Aggravating Circumstances
In Ground 21, petitioner argues that his death sentence is unconstitutional because it was supported by unconstitutionally obtained evidence. More particularly, petitioner here challenges the State's use in the penalty phase of testimony concerning prior unadjudicated crimes and weapons seized in those incidents, and the trial court's refusal to consider a motion to suppress those species of evidence. The State argues that the Missouri Supreme Court's refusal to conduct plain error review of this claim constitutes a procedural bar to its consideration by this Court.
Although the Court has agreed with that argument where applicable, on this point it appears to the Court that the claim had properly been preserved for appeal and that the Missouri Supreme Court's review of it was not properly limited to the plain error standard. The issue was raised in Claim XI(E) of petitioner's first amended 29.15 motion, and again in his consolidated appeal to the Missouri Supreme Court. Resp. Exh. F-I, pp. 119-20; Resp. Exh. G, pp. 90-92. The Court will therefore address the claim on the merits rather than enforce a procedural bar which appears to be in error.
Petitioner is not entitled to relief on this ground because the Fourth Amendment exclusionary rule has not been held to apply to sentencing proceedings. See, e.g., United States v. Tauil-Hernandez, 88 F.3d 576, 581 (8th Cir. 1996), and cases cited therein. The denial of an opportunity to argue that physical evidence to be adduced during the penalty phase was seized in violation of the Fourth Amendment was therefore not prejudicial to petitioner. Even if the Court were to determine as a matter of first impression that, although generally inapplicable to sentencing, the exclusionary rule applies to capital sentencing proceedings because "death is different," the application of that rule to petitioner's case would be barred by the non-retroactivity principle of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Teague generally bars the application of a new constitutional rule of criminal procedure to cases on collateral review. For all the foregoing reasons, the Court will grant no relief on the basis of Ground 21.

Ground 22: Trial Court's Handling of Jury's Penalty Verdict
Next petitioner asserts that the death sentence was unconstitutionally imposed because, after the jury failed to make specific findings of fact supporting its penalty decision, the trial judge directed the jury to re-read a particular instruction and return a sentence of death according to it. The instructions and verdict forms required that, in the event the jury assessed the death penalty, they write on the verdict form the aggravating circumstance which they had found beyond a reasonable doubt. After six hours of deliberation, the jury initially returned the verdict with the following handwritten notation: "The murder of Nancy Johnston involved torture and depravity of mind and as result thereof, the murder was outrageously and wantonly vile, horrible and *991 inhuman." Resp. Exh. C, p. 377; Resp. Exh. A-VIII, p. 1876. In the Court's view, that inscription fully stated the sole aggravating circumstance submitted in Instruction No. 17, and so complied with the instructions' requirements. After listing the aggravating circumstance as initially stated by the jury, Instruction No. 17 goes on to provide a four-element definition of the "depravity of mind" component of the aggravating circumstance. The trial court and counsel were of the view that the jury was required to write out all four elements of this definition in addition to stating the aggravating circumstance. Ground 22 challenges the procedure the trial court employed in response to what it perceived as only a partial completion of the verdict form.
Over the strenuous objection of defense counsel, the trial court returned the instructions and verdict form to the jury and sent them back out, as follows:
THE COURT: Directing this to the foreman.
The Court has reviewed the forms of verdict that you have tendered to the sheriff. The forms are not in the proper presentment to the Court.
And I'm going to invite the jury to the jury room and invite you to reread Instruction number 21 for the completion of this verdict form.
And I'm refusing the first verdict form as to Count I.
We're going to be in temporary recess. The jury will go back to its jury room.
Resp. Exh. V-III, p. 1882. Instruction No. 21 explained the appropriate procedures for the jury's recording their determinations on the various verdict forms provided, and included the directive that if the jury decided in favor of the death sentence, that their foreman "must write into [the] verdict all of the aggravating circumstances submitted in Instruction No. 17 which [were] found beyond a reasonable doubt." Resp. Exh. C, p. 373. Fifteen minutes after being sent back to the jury room, the jury returned to the courtroom, having added to the same verdict form a handwritten recitation of the four elements of "depravity of mind" as set forth in Instruction No. 17.
The Court readily determines that the trial court's handling of the situation described above did not violate petitioner's constitutional rights. Petitioner cites the factors identified in United States v. Smith, 635 F.2d 716, 721 (8th Cir.1980), in an Allen charge context, for testing the propriety of supplemental communications with jurors during deliberations: "(1) the content of the challenged instruction, (2) the length of the period of deliberation following the Allen charge, (3) the total time of deliberation, and (4) any indicia in the record of coercion or pressure upon the jury." Upon careful consideration of these factors and others, the Court is not persuaded that any coercion occurred.
Speaking of federal trial courts, the Eighth Circuit has indicated that: "[a] district court has discretion to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury." Smith v. Riceland Foods, Inc., 151 F.3d 813, 821 (8th Cir.1998). The verdict form as initially returned by the jury clearly indicated that the jury had found the aggravating circumstance to exist and had reached a verdict in favor of death. The court's response to the jury plainly indicated that the perceived problem with the verdict was one of form, not of substance, and merely directed the jury to the instruction which would clarify the form in which the determination already reached must be communicated to the court. The jury was quick to make additions to the verdict consistent with the decision they had already reached. Nothing about the circumstances suggests or supports the conclusion that the trial court's handling of the situation coerced the verdict fixing the death sentence. No constitutional violation is shown, and no relief is warranted on Ground 22.

*992 Ground 23: Sufficiency of the Evidence as to Torture and Depravity
In this ground for relief, petitioner challenges the sufficiency of the evidence supporting the finding of torture and depravity of mind as an aggravating circumstance. As indicated above with respect to Ground 13, the applicable standard for § 2254 review of a sufficiency of the evidence claim is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Having reviewed the entire trial record, the Court concludes that the direct and circumstantial evidence at trial, particularly the testimony of the several eyewitnesses to the beating and the medical testimony, were sufficient to support a rational factfinder's determination of torture and depravity of mind as submitted in Instruction No. 17. Ground 23 is without merit.

Ground 24: Punishment Phase Jury Instructions
Petitioner argues that the jury instructions concerning the death-sentencing process were inaccurate and incomprehensible, rendering his death sentence unconstitutional. More specifically, petitioner contends that several MAI instructions conflict on the requirements of unanimity and the ramifications of a lack of unanimity. The State contends that this ground is procedurally defaulted because it was not raised in the state courts on direct appeal or on appeal from the denial of petitioner's postconviction motion. Petitioner cites to the portion of his consolidated appeal brief asserting the claim, however. Resp. Exh. G, pp. 103-05. The Court will therefore treat the claim on the merits.
In particular, petitioner argues that the provisions of Instruction No. 21 (MAI-CR3d 313.48) concerning unanimity conflict with those portions of Instruction No. 17 (313.40) and No. 18 (313.42) which explain that when the jury is not unanimous, a life sentence results. Instruction No. 17 advises the jury that if they are not in unanimous agreement that the aggravating circumstance is proved beyond a reasonable doubt, then they must return a verdict for life imprisonment without the possibility of probation or parole. Resp. Exh. C, p. 368. Instruction No. 18 repeats this same explanation. The wording of Instruction No. 21 is not, in the Court's view, contradictory.
In pertinent part, Instruction No. 21 advises the jury: "You cannot return any verdict as the verdict of the jury unless all twelve jurors concur in and agree to it[.]" Id. at 373. This language does not require unanimity as to any and all decisions by the jury, but instead indicates that all jurors must agree that any verdict returned accurately reflects the jury's conclusions, whether unanimous or not. Instruction No. 21 twice refers to unanimity, but only to direct the jury how to complete the verdict forms if they are unanimous as to death or as to a life sentence. Finally, No. 21 instructs the jury that if they are "unable to agree on punishment," they are to return a verdict so stating and the Court will fix the punishment.
The potential for confusion among jurors in cases involving complex facts or legal principles is ever present, and cannot be entirely eliminated. Where, as here, the jury instructions correctly explain complex principles without any inherent conflicts, the potential for confusion is adequately addressed. The Supreme Court recently advised:
Our decisions repeatedly have cautioned that instructions must be evaluated not in isolation but in the context of the entire charge... We previously have held that instructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions.
Jones v. United States, 527 U.S. 373, 391, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Considering the instructions as a whole *993 and the trial record generally, there exists no reasonable likelihood that the jury applied the challenged instructions in a manner that violates the Constitution. Petitioner's reliance upon the expert testimony offered in his state postconviction proceedings as to the low level of jury comprehension of death penalty instructions generally does not impact the Court's conclusions. No relief will be granted on Ground 24.

Ground 25: Ineffective Assistance as to Punishment Phase Jury Instructions
In Ground 25, petitioner asserts that his trial counsel's failure to object to the sentencing phase jury instructions on the bases argued in Ground 24, or to proffer alternative instructions, deprived petitioner of effective representation in violation of his Sixth Amendment rights. Because, for the reasons stated above, the instructions were not objectionable and were not prejudicial to the defense, trial counsel's failure to object to the instructions did not constitute deficient performance. Ground 25 is therefore without merit.

Ground 26: Reasonable Doubt Instruction
Defendant contends that at both phases of the trial the jury was instructed as to a definition of reasonable doubt which lowered the State's burden of proof below constitutional requirements by requiring only that the jury be "firmly convinced" of its findings. Petitioner is challenging the reasonable doubt formulation in two Missouri Approved Instructions, 302.04 and 313.30. Citing Murray v. Delo, 34 F.3d 1367, 1382 (8th Cir.1994), the State argues that the claim is Teague-barred. In a more recent case in which the same claim was not Teague-barred, the Eighth Circuit has examined the language petitioner challenges here and has found it not to unconstitutionally weaken the reasonable doubt standard. In that case, Harris v. Bowersox, 184 F.3d 744, 750-52 (8th Cir.1999), the Court of Appeals denied habeas corpus relief. In view of these precedents, petitioner is not entitled to relief on Ground 26.

Ground 27: Ineffective Assistance as to Petitioner's Mental Health & Other Personal History
Petitioner next asserts that his trial counsel rendered ineffective assistance by failing to:
(a) present the testimony of a psychiatrist, Dr. Parwatikar, who found that petitioner was incapable of deliberation;
(b) investigate and present mental health evidence concerning petitioner's prior head injuries, alcohol dependency and organic or personality disorder; and
(c) investigate and present a complete life history in support of sentencing mitigation.
In response, the State cites at some length those portions of the Missouri Supreme Court's opinion discussing the various species of ineffective assistance alleged in this ground. See Response to Show Cause Order [Doc. # 17], pp. 31-34. After careful consideration, applying the standard of 28 U.S.C. § 2254(d)(1), the Court agrees with the State that petitioner may not be granted relief because the Missouri Supreme Court's consideration of all prongs of this ineffective assistance claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent. Furthermore, having reviewed the trial record as a whole, the Court is not persuaded that the strategic decisions of petitioner's counsel attacked in this ground were so uninformed or ill-advised as to constitute deficient performance, or that it is reasonably likely that the omitted evidence now invoked by petitioner would have affected the outcome of either phase of the trial. Strickland, 466 U.S. at 690, 104 S.Ct. 2052,[6] 694. Relief on Ground 27 will therefore be denied.

*994 Ground 28: Petitioner's Sedation During Trial
In Ground 28, petitioner contends that because he was sedated with psychoactive medication during trial, his ability to interact with his counsel and to comprehend the proceedings was compromised in violation of his Fifth, Sixth and Eighth Amendment rights. The State contends that this ground is procedurally defaulted because it was not raised in the state courts on direct appeal or on appeal from the denial of petitioner's postconviction motion. Petitioner's response is to contend that the claim is not defaulted by virtue of his assertion of the associated ineffective assistance of counsel claim in the state courts, citing Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Kimmelman does not stand for the proposition that an ineffective assistance claim constitutes presentation of the underlying substantive claim of error as well. In fact, Kimmelman suggests to the contrary, in that it clearly states that ineffective assistance claims and the underlying claims of error are "distinct, both in nature and in the requisite elements of proof." Id. at 374, 106 S.Ct. 2574. Petitioner's failure to raise the substance of Ground 28 throughout his state court review erects a procedural bar to this Court's consideration of the claim, and no relief will be granted on Ground 28.

Ground 29: Ineffective Assistance as to Petitioner's Sedation During Trial
Petitioner asserts that his trial counsel rendered ineffective assistance by failing to discover the high doses of medication petitioner was on during trial and failing to request that the trial court terminate the medication. In the Court's view, petitioner's argument on Ground 29 relies heavily on unwarranted inferences. To merit relief on this claim, petitioner must demonstrate that it was objectively unreasonable for his counsel not to have discovered the medication petitioner was on and the allegedly deleterious impact it was having on petitioner's ability to function in support of his defense. This can only be shown by evidence that petitioner's demeanor or conduct at the time of trial, or some other circumstance actually known to counsel, suggested some impairment which should have been investigated.
Petitioner's evidence concerning the effects of the medications generally is not sufficiently strong to carry an inference that petitioner must have exhibited some impairment which counsel should have perceived. Neither is the record evidence concerning the actual impact the medications had on petitioner at and before his trial. Petitioner's counsel testified that petitioner was able to communicate with counsel, appeared to understand his conversations with counsel, and gave no indication of being "comatose or lackadaisical" or "in another world." Resp. Exh. B-IV, pp. 606-08. The medical testimony offered by petitioner indicated that, although the types of medications petitioner was on sometimes cause apathy and difficulty concentrating, the drugs might have "little if any outward effect." Resp. Exh. B-III, p. 483. Petitioner's mother testified that during her visits to him in jail, he seemed more docile and less "hyper" than usual, an effect she attributed to the medications, but that petitioner was able to understand her and communicate to her, and was oriented and lucid. Resp. Exh. B-I, pp. 76-78. Based on this record, petitioner fails to demonstrate that there existed circumstances which would have alerted a reasonably competent attorney to investigate whether petitioner was suffering from some impairment of his mental or emotional state. The Court therefore concludes that petitioner cannot establish that his trial counsel's performance was constitutionally defective in this regard.

*995 Ground 30: Ineffective Assistance as to Certain Evidence
In Ground 30, petitioner's trial counsel is alleged to have been ineffective for failing to present evidence of petitioner's posting a bond for his wife the day before she was killed and of the happy interaction between the two at that time, and failing to present evidence that no .22 caliber shell casings were found at the murder scene. The first prong of Ground 30 focuses on counsel's failure to call as a witness at trial Chris Telle, the bondswoman who could have testified concerning petitioner's arranging the bond for his wife's release.
In response, the State asserts that the claim was not preserved for appeal because it was not asserted in petitioner's 29.15 proceedings, and that the Missouri Supreme Court declined to conduct plain error review and found the point procedurally waived. In his traverse, petitioner does not contend that the issue was properly raised in the 29.15 proceedings, and the Court's own review of the various 29.15 filings fails to disclose any claim of ineffective assistance of counsel relating to Ms. Telle's potential testimony or other evidence concerning the state of the couple's relationship at the time of the victim's release on bond the day before her death. It appears, then, that the claim is procedurally barred. Were the Court to consider the claim on the merits, relief would nonetheless be denied for lack of prejudice. Viewed against the entire trial record, such evidence is not reasonably likely to have produced a different result in either stage of the trial.
The Court next turns to the point concerning counsel's failure to adduce evidence that no spent shell casings were found outside. The State does not assert that this issue is procedurally defaulted, and the Court addresses it on the merits. As with the previous point, the Court is firmly persuaded that the lack of such evidence was not prejudicial to the defense in the Strickland sense. A neighbor witness testified that she saw petitioner stand over the victim in the front yard and point the rifle at her, and further testified that she thought she had heard one shot fired. But petitioner was convicted of the beating death of his wife, the medical evidence did not indicate the victim had been shot, and petitioner does not assert that the prosecutor urged any inference by the jury that the victim had been shot or even shot at. On this record, then, it is not reasonably probable that evidence contrary to the witness' isolated testimony concerning the sound of a gunshot would have changed the outcome of the trial as to either guilt or punishment. Ineffective assistance of counsel is therefore not shown, and no relief will be granted on Ground 31.

Ground 31: Postconviction Hearing
Petitioner contends that his due process rights were violated by the lack of a full and fair postconviction hearing. More specifically, petitioner's challenge focuses on the denial of expert assistance in the form of an MRI brain scan and the denial of access to the State's trial file. Petitioner cites no authority for the proposition that denial of full and fair postconviction proceedings is a constitutional violation which supports habeas corpus relief from his conviction or sentence. The law appears to be to the contrary:
Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir.1984)... Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. Williams v. State of Missouri, 640 F.2d 140, 143 (8th Cir.1981)... Habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the constitution or laws of treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Appellant's *996 claim [of inadequacies in the Missouri post-conviction proceedings] is collateral to appellant's conviction and detention, and is therefore not cognizable in a 28 U.S.C. § 2254 petition.
Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.1990). Relief on Ground 31 will therefore be denied.

Ground 32: Ineffective Assistance of Direct Appeal Counsel
Conceding that he had failed to exhaust available state remedies as to this ground for relief, petitioner has voluntarily dismissed Ground 32. See Order of October 1, 1998 [Doc. # 14].

Ground 33: Proportionality Review
In Ground 33, petitioner challenges the adequacy of the Missouri Supreme Court's statutorily mandated proportionality review of petitioner's death sentence. Such a claim is not a basis for habeas corpus relief. To borrow from the Eighth Circuit's opinion in Zeitvogel v. Delo, 84 F.3d 276, 284 (8th Cir.1996):
The Missouri Supreme Court reviewed [petitioner's] sentence during his direct appeal...and addressed and decided the proportionality issue in its opinion... Under our recent decisions, this is the end of our inquiry. See LaRette [v. Delo], 44 F.3d [681] at 688 [(8th Cir. 1995)]; Foster [v. Delo], 39 F.3d [873] at 882 [(8th Cir.1994)]; Murray v. Delo, 34 F.3d 1367, 1376-77 (8th Cir. 1994)[.]
Ground 33 offers no meritorious basis for habeas corpus relief.

Conclusion
Upon careful consideration, the Court determines that petitioner has not shown an entitlement to habeas corpus relief on any of the grounds asserted in his petition. The Court has also reconsidered petitioner's request for an evidentiary hearing, and concludes that no ground of the petition requires further evidentiary development for its resolution. Furthermore, petitioner fails to demonstrate that an evidentiary hearing is warranted under the applicable standards enunciated in 28 U.S.C. § 2254(e)(2). The request for an evidentiary hearing will therefore be denied.
Accordingly,
IT IS HEREBY ORDERED that petitioner's request for an evidentiary hearing [Doc. # 11], previously denied without prejudice, is reconsidered but is denied.

JUDGMENT
Pursuant to the memorandum opinion and order entered herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.
IT IS FURTHER ORDERED that a certificate of appealability is denied, subject to reconsideration by the United States Court of Appeals for the Eighth Circuit. Petitioner has failed to demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, or that jurists of reason would find it debatable whether this Court has been correct in its procedural rulings.
NOTES
[1] As to some of these ten, the Missouri Supreme Court considered related ineffective assistance of counsel claims based on trial counsel's failure to object, but that court did not apparently have before it the instant claims that the prosecutor's remarks themselves violated petitioner's constitutional rights.
[2] "Tim's attorney failed to object to the nine witnesses' testimony and to the improper argument. Therefore, Tim requests plain error review under Rule 29.12...Tim also requests review on his 29.15 appeal." (Emphasis added.)
[3] "Alternatively, the motion court clearly erred in denying Tim's claim that counsel was ineffective in failing to object to the unadjudicated crimes evidence."
[4] Petitioner does not direct the Court's attention to a particular page of the opinion.
[5] This evidence is aptly summarized in the petition [Doc. # 10] at pp. 71-2.
[6] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. ..." Id.